**McDONALD v. HUDSPETH, Warden.**

No. 525.

District Court, D. Kansas, First Division.

April 19, 1941.

John F. Rhodes, of Kansas City, Mo., for petitioner.

S. S. Alexander, U. S. Atty., and Homer Davis, Asst. U. S. Atty., both of Topeka, Kan., for the government.

HOPKINS, District Judge.

The action is one in habeas corpus, one much out of the ordinary. To the writer of this opinion, it appears that the petitioner Cassius McDonald might be likened to one near a whirlpool who was engulfed by swirling waters. He was indicted with the Bremer kidnappers. He was tried with two other defendants who had participated in the enterprise from its very formation, but guilt of the petitioner was claimed by the Government only on the ground that he entered into the conspiracy months after the kidnapping and for the purpose of exchanging some of the ransom money. In fact, on the trial the Government excluded petitioner from any participation in the kidnapping and transportation of Bremer. He was tried in Minnesota, whereas his part of the crime was claimed by the Government to have taken place in Florida.

The petitioner was indicted in the District Court of the United States for the District of Minnesota (United States v. Alvin Karpis, et al.). The indictment charged that McDonald had conspired with such others to kidnap, transport interstate, and hold for ransom one Edward George Bremer, in violation of 18 U.S.C.A. § 408c. Petitioner was tried, found guilty, and sentenced to imprisonment in the penitentiary for a term of fifteen years. He appealed to the Eighth Circuit Court of Appeals, which affirmed the decision of the lower court. McDonald v. United States, 8 Cir., 89 F.2d 128. Certiorari was denied by the Supreme Court of the United States, 301

U.S. 697, 57 S.Ct. 925, 81 L.Ed. 1352. Petition for rehearing was also denied by the Supreme Court of the United States, 302 U.S. 773, 58 S.Ct. 4, 82 L.Ed. 599, and thereafter that Court denied an application for writ of coram nobis. 303 U.S. 622, 58 S.Ct. 640, 82 L.Ed. 1085.

On October 20, 1938, petitioner filed this petition for writ of habeas corpus. He appeared without counsel. This court first appointed as his attorney John M. Williams, of Topeka, and later John F. Rhodes, of Kansas City, Missouri, who now appears for petitioner and who has devoted much time, energy, and expense on petitioner's behalf.

Edward George Bremer was kidnapped in St. Paul, Minnesota, January 17, 1934. On February 6, 1934, Bremer was released after payment in his behalf of some $200,000 in ransom money. Thereafter, the actual kidnappers, ten in number either died or were apprehended by the government, and some of them were convicted. While petitioner did not participate in the kidnapping, as was admitted by the District Attorney in Minnesota, he was tried on a conspiracy charge jointly with two of those who did participate in that enterprise, and was convicted in January, 1936. He was committed to the United States Penitentiary at Leavenworth, Kansas, where he has since been confined.

The indictment upon which petitioner was tried and convicted charged that the petitioner did unlawfully conspire, confederate and agree with various and divers persons to violate the Act of Congress which forbids transportation in interstate commerce of any person kidnapped or otherwise unlawfully detained. No place, state or locality where he did so conspire was established.

The indictment charged specific overt acts by McDonald as follows:

"9. On September 2, 1934, defendant Cassius McDonald, alias 'Cash' McDonald, went from Miami, Florida, to Havana, Cuba, to negotiate for the exchange of ransom moneys paid to defendants for the release of Bremer.

"10. On September 5, 1934, defendant McDonald exchanged a portion of the ransom moneys paid to the defendants for the release of Bremer, for $11,000, more or less, in gold.

"11. On September 9, 1934, defendant McDonald and defendant William J. Harrison went from Miami, Florida, to Havana, Cuba, to negotiate for the exchange of ransom moneys paid to defendants for the release of Bremer.

"12. On September 10, 1934, at Havana, Cuba, defendant McDonald exchanged $72,-000, more or less, of the ransom moneys paid to defendants for the release of Bremer, for other currency of the United States of $1000 and $500 denominations."

Petitioner was not charged with knowingly exchanging any ransom money at any time. He was first indicted in Florida for the offense of which he was subsequently indicted and convicted in Minnesota. The Florida indictment was allowed to pend until long after his conviction in Minnesota and was finally dismissed by the government. One of the defendants charged jointly with petitioner in the Florida indictment was later tried, and the court directed the jury to return a verdict of not guilty in his case, which was done.

On petitioner's trial in Minnesota, the question of venue and jurisdiction of that court was not raised and, in my opinion, there was no evidence on the trial of that case warranting the court retaining jurisdiction over the petitioner. He was tried in a jurisdiction wherein no offense was in fact proved against him. Petitioner was charged with a conspiracy. No venue was laid in this respect, but venue of the overt acts was laid in Florida. The evidence on petitioner's trial and conviction showed that if there was a conspiracy, it took place outside the district and state of Minnesota.

On petitioner's trial and conviction in Minnesota, an attorney appeared for him, but it appears clearly to me petitioner had no effective assistance of counsel because of the attorney's continual intoxication. Petitioner was not permitted to testify in his own behalf for the reason the attorney declined to put petitioner on the stand, although requested by him to do so. Likewise, he declined to use witnesses produced by petitioner. The attorney was constantly incapacitated and under the influence of liquor throughout the trial, I am convinced, to an extent that he was wholly incompetent and ineffective on petitioner's behalf. The attorney on several occasions was assisted or led from the courtroom and without halt in the trial proceedings. This inability and intoxication of petitioner's counsel on his trial in Minnesota was established in this proceeding to my mind beyond question not

only by petitioner's own testimony but by the testimony of counsel for other defendants on that trial, by representatives of the press, court attaches, and by the transcript of the record of that trial.

The petitioner has strongly urged two main points:

1. That venue was improperly laid in the District of Minnesota and that that court had no jurisdiction of the petitioner Cassius McDonald.

2. That petitioner McDonald was not represented by counsel on his trial in the federal district court of Minnesota as contemplated by the Constitution of the United States and that such right was not waived.

1. Respecting venue and jurisdiction of the federal court in Minnesota. The charge against McDonald was that he conspired to kidnap and transport the kidnapped person in interstate commerce in violation of 18 U.S.C.A. §§ 408a and 408c. These statutes in part read:

"Whoever shall knowingly transport or cause to be transported, or aid or abet in transporting, in interstate or foreign commerce, any person who shall have been unlawfully seized, confined, inveigled, decoyed, kidnapped, abducted, or carried away by any means whatsoever and held for ransom or reward or otherwise * * *." Sec. 408a.

"If two or more persons enter into an agreement, confederation, or conspiracy to violate the provisions of sections 408a and 408b of this title, and do any overt act toward carrying out such unlawful agreement, confederation, or conspiracy, such person or persons shall be punished in like manner as provided for by said sections." Sec. 408c.

Specifically, McDonald was charged under the last section above quoted. It was charged that he conspired to violate the first section quoted above. There was no evidence on his trial that McDonald conspired at any time in the state of Minnesota as charged in the indictment, and the Government in the course of the trial exonerated McDonald from any participation in the actual kidnapping; guilt being attributed to McDonald wholly upon the claim that some months after the kidnapping and release of Bremer, McDonald undertook the task of exchanging money paid as ransom for Bremer's release. The overt acts attributed to McDonald, quoted above, were all alleged to have been done in Florida and in Cuba. And, irrespective of the charges set out in the indictment, the evidence produced by the Government to establish the guilt of McDonald was wholly to the effect that if he did anything at all in the way of conspiring, confederating, and committing acts in furtherance thereof, it was all done in Florida and Cuba, and not within the district of Minnesota.

The sixth amendment to the Constitution of the United States carries the mandate that an "accused shall enjoy the right to a speedy public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law."

■ The law has been established by repeated decisions and by the wording of the statute quoted above, that to conspire is not an offense of itself but that it is the overt act in furtherance of a conspiracy that completes the offense. Dimond v. Shine, 199 U.S. 88, 25 S.Ct. 766, 50 L.Ed. 99; United States v. Rabinowich, 238 U.S. 78, 35 S.Ct. 682, 59 L.Ed. 1211.

The charge of the Government and certainly the only evidence put forth by the Government to support the charge had to do with McDonald's activities in Florida and Cuba. There was neither charge nor proof sufficient to give the court in Minnesota jurisdiction over the petitioner.

I have inspected the transcript covering the trial of the petitioner in Minnesota with some care, and it is my opinion that in no view of the evidence can it be said that McDonald committed an offense within the jurisdiction of that court. If McDonald committed the offense with which he was charged, he committed it in the state of Florida. In this connection, see Burton v. United States, 202 U.S. 344, 381, 26 S.Ct. 688, 50 L.Ed. 1057; Kay v. Snyder, 57 App.D.C. 259, 20 F.2d 273; Marcus v. United States, 3 Cir., 20 F.2d 454.

■ Venue of a conspiracy charge is fully discussed in the cases of Hyde v. United States, 225 U.S. 347, 32 S.Ct. 793, 56 L.Ed. 1114, Ann.Cas.1914A, 614, and Brown v. Elliott, 225 U.S. 392, 32 S.Ct. 812, 56 L.Ed. 1136. There were some differences of opinion among the Justices of the Supreme Court at that time, but, in the latter of the two cases, it was pointed-

ly set forth that the activities of the conspiracy fixes the jurisdiction. It was said:

"In other words, not the place of the activities of the conspiracy and where it incurs guilt, but the place of its formation, which no one may know or can find out, is the place of the jurisdiction of its trial. And what compels this? It is answered: The 6th Amendment of the Constitution of the United States. We have determined otherwise in Hyde v. United States [supra, 225 U.S. page 347, 32 S.Ct. page 793, 56 L.Ed. 1114, Ann.Cas.1914A, 614].

"The Constitution of the United States is not intended as a facility for crime. It is intended to prevent oppression; and its letter and its spirit are satisfied if, where a criminal purpose is executed, the criminal purpose be punished." Hyde v. United States, 225 U.S. page 402, 32 S.Ct. page 815, 56 L.Ed. 1114, Ann.Cas.1914A, 614.

McDonald had been indicted in Florida prior to the return of the indictment in Minnesota, and it is my view he should have been tried in Florida. The Florida indictment carried the name also of one Joe Adams, and upon trial of his case the trial judge in Florida directed a verdict of not guilty.

The petitioner claims, and I think with merit, that "the hysteria present at St. Paul on the trial of defendant, because of the prominence of Bremer in St. Paul and because of exaggerated statements of the press and others at that time and at that place, were wholly lacking in Florida. In Florida, the calm, unprejudiced mind giving consideration to petitioner's case would of course have arrived at the conclusion that McDonald was not and never had been at any time in any wise connected with the kidnapping of Bremer.

I think it is clear that the only testimony concerning McDonald in Florida was that of Joseph H. Adams, a co-defendant in the Florida case, that he was seen in Florida in the presence of three men who were going under names different from their real names, and Adams states that he was there for the purpose of seeking to establish a gambling house of some sort. The testimony concerning McDonald's activities in Cuba was to the effect McDonald bought and sold some gold and exchanged bills of small denomination for larger denomination in a Cuban bank, and that there was found in the Cuban Treasury, months after the kidnapping took place in St. Paul, a total of $12,760 in bills identified as a part of the ransom money. No one testified that McDonald exchanged ransom money, as the Government claims; and it appears that the Government itself deliberately and out of the usual course of handling such things directed the destruction of the $12,760 in bills which it was stated bore numbers the same as the numbers of some of the bills used for ransom money in the Bremer kidnapping.

The petitioner has stated in the presentation of his application for a writ of habeas corpus and in other documentary evidence presented in this case, that he was in Cuba in September, 1934, for the purpose of arranging for the operation of concessions in Cuba, a legitimate business there, and for the purpose of paying off $50,000 on a mortgage on those concessions.

This appears to be the extent of the evidence, and from which it appears the Florida court directed the verdict of not guilty in the trial on the indictments against Joe Adams and others.

As before stated, the venue of the action against McDonald appears not to have been raised in the trial of the case at St. Paul. Competent counsel for McDonald surely would have raised the question.

In Bowen v. Johnston, Warden, 306 U.S. 19, 59 S.Ct. 442, 83 L.Ed. 455, it was held that, if it be found the court had no jurisdiction to try the petitioner or that in its proceedings his constitutional rights have been denied, the remedy of habeas corpus is available.

The facts here, when considered in connection with the law applicable thereto lead me to the conclusion that the United States District Court in Minnesota had no jurisdiction of petitioner.

2. Did petitioner enjoy the assistance of counsel for his defense on the trial in Minnesota?

In considering this question it should be noted that section 408c—1, 18 U.S.C.A., making it an offense to handle ransom money, became effective in January, 1936, about the time McDonald went on trial in Minnesota. McDonald was not charged under this new legislation. He stood charged with conspiring to violate the substantive offense defined in section 408a, the penalty for which might have been life imprison-

186

ment; and, under circumstances mentioned in the Act, the death penalty may be imposed.

McDonald's trial was begun on the sixth of January, 1936, at St. Paul. The record shows the appearance of Everett Jennings of Chicago for McDonald. At the outset of the proceedings, there was a discussion between court and counsel respecting division of the charges of the court reporter. All counsel took part in this discussion with the exception of Jennings, the one who should have been most concerned, since little if any of the evidence during the first two weeks of the trial pertained to his client, McDonald.

The following day, Jennings was not present on the opening of court, and upon the court's suggestion that counsel for other defendants represent him in selecting the jury, McDonald responded, "I have no objections, Your Honor, as long as I do not lose any of my rights."

Jennings appeared later and announced to the court that he understood McDonald would have another lawyer. McDonald stated he expected Edward Barnard of Detroit. Barnard did not appear, however, and Jennings continued McDonald's attorney of record throughout the trial.

The record in McDonald's habeas corpus proceeding before me, which includes a transcript of the trial in Minnesota, has convinced me that Jennings was counsel for the defense of McDonald in name alone, and that due to Jennings' continual intoxication, McDonald was denied counsel. The situation was more grievous than had he been wholly without pretense of counsel.

Relative to Jennings' condition during the early days of the trial, McDonald testified in this proceeding that Jennings was drunk most of the time; that other attorneys reached over and kicked him under the table to straighten him up; that Jennings would drop his head, go to sleep, and they would give him a kick and wake him up; that this went on for several days; that, when McDonald proposed to the trial judge that he be permitted to obtain other counsel, the judge said, "Go on with the case"; that Jennings' condition was obvious to everyone in the courtroom; that he was drunk and incapacitated; that it was obvious to the court.

McDonald's version of Jennings' condition is corroborated by the testimony of several others. Robert V. Rensch, who represented one of the defendants, testified in this proceeding that Jennings "was not in a condition to give proper counsel." This witness, referring to Jennings' pathetic three-minute argument to the jury at the close of a three-weeks trial, stated: "I would say that it was an argument that reflected some unusual mental condition. I do not know whether I recall all of the argument. My recollection of it is that it lasted not to exceed five minutes, and I remember that he spent most of the time stating that the United States need not have any worry as long as Mr. Sullivan and Mr. Heisey represented them, that they had conducted this case in a very high grade manner, and I would say that at least half of his argument was spent in words of a laudatory nature to Mr. Heisey and Mr. Sullivan, and I do not recall that he dwelt particularly on the issues of his client's case, at any length, at least."

This witness on one occasion, at a gesture from the trial judge, took Jennings from the courtroom. He described Jennings at the time as being "in a stupor." Following this occurrence, the witness and other persons discussed among themselves what action, if any, the court would take; "in other words, we knew then that the court was cognizant of his condition." The witness further testified:

"I do not think there was anybody in the courtroom that was not cognizant of the fact that Mr. Jennings was drunk.

"Q. On many occasions? A. I think continuously; my best recollection is that it was continuously throughout the entire trial."

Lewis L. Drill, a lawyer in Minnesota since 1904, who represented one of the defendants, expressed the opinion that McDonald did not have the guiding hand of counsel throughout the proceeding, and when questioned concerning the responsibility of other defense counsel to look out for McDonald's interest, he stated, "We felt more than the ordinary interest that one counsel would have for another man's client but that is all. So far as our obligation was concerned * * * when it comes to obligations, though, we had no obligations at all." He stated that other counsel manifested interest but neither had nor assumed any obligations.

It was pointed out by this and other witnesses that the interests of the respective defendants conflicted.

A. Jerome Hoffman, who represented one of the defendants, testified that Jennings was under the influence of liquor every day of the trial; that Jennings was physically present, but was not mentally alert and competent; that Jennings would talk to himself or mumble under his breath; and one day Jennings suddenly arose, holding his handkerchief to his mouth, and dashed for the door. The witness described Jennings' conduct near the close of the trial:

"There had been some discussion between defense attorneys as to what the order of arguments on behalf of the various defendants would be. * * * Mr. Jennings wanted to make the last argument on behalf of any of the defendants. The court adjourned that night, as I recall it, at about 4:30 o'clock. Mr. Jennings was perhaps more intoxicated that day than any other time that I have seen him, and in my opinion had considerable trouble in standing up, and the Court adjourned with the understanding that he would argue the case the next morning on behalf of his client.

"And then, of course, his conduct on the last day of the trial, when he argued Mr. McDonald's case to the jury, for a period of about four minutes,—that all indicated to me that the man was continuously under the influence of liquor."

Eugene D. O'Sullivan of Omaha, Nebraska, a practicing lawyer since 1910, assisted in the defense of one of the other defendants. Concerning Jennings, he said: "My belief and recollection is that he drank continuously from the beginning to the end of the trial and grew progressively worse."

He stated that Jennings' condition would have been apparent to anyone who had the power of observation, and that "during the course of the trial, after it got well started, during recess he (Jennings) would be out in the hallway abusing the trial judge in a loud voice, to the amusement of the newspaper men and in the presence and hearing of the court bailiff." That "he smelled of liquor and talked loud."

John M. Carlisle, Jr., a reporter on the Detroit News, testified that during the trial Jennings was drunk; that it was Jennings' procedure upon leaving the courtroom to go to the hotel bar and drink to the point of intoxication, when a bell boy would take him to his room and put him to bed.

In Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, the Supreme Court took steps for the full recognition by the federal courts of the constitutional right of an accused to the assistance of counsel for his defense. The court observed that full compliance "requires the guiding hand of counsel at every step in the proceedings against him."

In Thomas v. District of Columbia, 67 App.D.C. 179, 90 F.2d 424, 428, it was said: "And the Sixth Amendment, guaranteeing the accused in a criminal prosecution the assistance of counsel for his defense, means effective assistance. Powell v. [State of] Alabama, 287 U.S. 45, 68–71, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527, * * * The plaintiffs in error were entitled * * * to a fair and impartial hearing; and it is obvious from the bill of exceptions, * * * that the hearing accorded them was not a fair and impartial hearing in the constitutional sense. They were in effect forbidden witnesses, and, in the denial of the right to argue the case * * * were forbidden the effective assistance of counsel."

The petitioner contends, and I think with justification, that he had no effective assistance, because of the continual intoxication of his counsel. He was not permitted to testify in his own behalf, and no witnesses, although present, were placed on the stand to testify in his behalf. They were sent away by petitioner's counsel. That the fixing of large bail, which kept the petitioner in jail in St. Paul over a long period of time, and the indictment in Florida, in addition, were calculated to and did prevent him from preparing adequately for his defense. That petitioner was obliged to rely upon his wife to procure counsel and that she was annoyed by federal authorities and hindered in her efforts to procure counsel. It is also contended, and I think with merit, that in the trial of the petitioner in St. Paul, the atmosphere of the city and court was not conducive to a fair trial. The kidnapped man was very influential in the vicinity. That the newspapers published inflammatory stories of every move made by the United States, all of which had a tendency to make a fair

trial impossible. That the petitioner was charged and tried with two of the arch conspirators, which could have no other effect than to create prejudice against him. He was denied a separate trial, whereas the ground for a separate trial was a reasonable one, it being based upon the conceded statements of the government that there was no claim that McDonald had anything to do with the kidnapping other than the claim that he entered the conspiracy several months after the payment of the ransom money in undertaking to exchange such money.

I think the evidence fairly shows that attorney Jennings procured by Mrs. McDonald was absent during parts of the trial and that while in court he was frequently sleeping; that on occasions he was led from the courtroom because of his condition, but the proceedings were not halted. On another occasion, McDonald states, Jennings became sick and was assisted from the courtroom by bailiffs, but the trial was not halted. That upon the request of the trial judge, Jennings was taken from the room by counsel for one of the other defendants, and the trial was not halted. That Jennings failed to cross examine fully on matters vital to petitioner, as competent counsel would have done. McDonald claims he requested the court to discontinue the trial until he could procure the services of Mr. Barnard. This request is not shown in the record but none of the many consultations which took place at the Judge's bench were taken by the reporter. McDonald claims that on other occasions he requested assistance of counsel, but was denied by the court.

■■ I am convinced from the record in this case and as abstracted and from the law applicable to the facts developed, that petitioner had no effective assistance of counsel as contemplated by the Constitution. The principles enunciated should be considered here. It is as important to protect the rights of one accused as it is to protect the rights of one not accused. All guilty persons should, of course, be punished but no innocent person should be punished. One accused of crime should have the effective assistance of counsel so that if innocent he will not be convicted.

I am convinced the writ should issue. Findings of fact and conclusions of law are filed in accordance with these views.