**COATES v. LAWRENCE, Superintendent and Warden of Georgia State Prison.**

District Court, S. D. Georgia, Savannah Division.

July 8, 1942.

Judgment Affirmed Oct. 27, 1942.

See 131 F.2d 110.

416

James R. Venable and F. A. Bowers, both of Atlanta, Ga., for petitioner.

E. L. Reagan, Asst. Atty. Gen. of Georgia, and Chas W. Walker, of Macon, Ga., for respondent.

LOVETT, District Judge.

Petitioner, under sentence of death upon conviction for murder in the superior court of Catoosa county, Georgia, has filed his petition for habeas corpus in this court, alleging upon oath violations of certain rights guaranteed to him by the Fifth, Sixth and Fourteenth Amendments, Art. III, § 2, clause 3, and Art. IV, § 2, clause 1, of the Constitution of the United States [1]. 28 U.S.C.A. § 451 et seq. The respondent, the warden of the state prison where petitioner is confined, has made his return, denies any invasion of petitioner's constitutional rights, and has also filed a plea in bar in the nature of a plea of res judicata. An amendment to the petition has been allowed, but it invokes no other clauses of the Constitution.

Evidence has been submitted, orally and by deposition, the petitioner, his counsel, the warden and others have testified, transcripts of records previously made have been offered and received without objection [2], and arguments of counsel for the respective parties been heard and considered.[3]

I find the facts to be:

On December 31, 1940, petitioner was indicted by the grand jury in Catoosa county, Georgia, for the murder of a state highway patrolman. The killing occurred on December 20, 1940. The arrest was made five days later in the state of Tennessee, and continuously since that time petitioner has been in the custody of the officers of the state, confined first in a hospital and later in the county jail in Atlanta, Georgia. The trial took place on February 5, 1941.

Promptly after indictment, probably the same day, the petitioner was taken before the Judge of the superior court of the Circuit in open court in the county where he was indicted. Being informed he was without counsel, the Judge inquired if he was able to employ a lawer. This inquiry was prompted by the fact he was an escaped convict from a prison in the state of Missouri where he was serving a life sentence and where he had previously resided, and there had come to the attention of the Judge a rumor that a substantial amount of money was found on his person when arrested. It turned out the money was being held by the officers of the law in the state of Tennessee, where the arrest was made. This appearing, and the prisoner saying he was unable to employ counsel, being without means or money, the Judge asked if he had communicated with his people in Missouri and, finding he had not, inquired if he wanted the court to appoint counsel for him. The prisoner said he did. Being a stranger he knew none of the lawyers in the county or section and expressed no preference as among

---

[1] The specific constitutional rights charged to have been violated are deprivation of life without due process of law, failure to have adequate assistance of counsel for his defense, denial of trial by jury in the manner required by the Constitution and failure to recognize his right as a citizen of another state to enjoy the privileges and immunities of citizens of the several states.

[2] The records received in evidence consist of the entire proceedings in an earlier habeas corpus case heard and determined in state court, including a review by the Supreme Court of the State, and copies of the bill of exceptions, motion for new trial and amendment thereto in the case in the state court in which the petitioner was convicted of murder, as they appear from the records in the State Supreme Court which reviewed the conviction.

[3] Issues of fact of a substantial nature having been made by the petition, return and traverse, it was necessary and proper that the prisoner be produced and a hearing of the nature indicated be had. Walker v. Johnston, 312 U.S. 275, 61 S.Ct. 574, 85 L.Ed. 830; Holiday v. Johnston, 313 U.S. 342(4), 550, 61 S.Ct. 1015, 85 L.Ed. 1392; Waley v. Johnston, 316 U.S. 101, 62 S.Ct. 964, 86 L.Ed. ——. decided April 27, 1942.

the several in the court room whose names were called for his information. The Judge thereupon named two reputable and experienced lawyers, of good reputation, one of whom had practiced his profession for about forty years, and who was then the representative of the county in the General Assembly of Georgia; the other had practiced fifteen years or more. The court room was vacated and turned over to the prisoner and his two designated counsel where a conference between them was then held, after which he was returned to Atlanta.

. While he was in Catoosa county at the time mentioned, the Judge assigned the case for trial at a special or adjourned term of the court to be held on January 17th. Later, at the request of prisoner's counsel and because of his physical condition, the trial was postponed to February 5th, which was the regular term. The Judge arranged for the county to pay the expenses of the counsel to and from Atlanta to confer further with their client, and this was done. The prisoner's feet had been frozen while he was a fugitive and some of his toes had to be amputated. The county physician examined him prior to the day first fixed for the trial, and on the doctor's first report the case was continued as stated. A later report showed he was no longer suffering pain, though he was unable to walk when tried. The trial was then set for February 5th.

When the case was tried, one of the counsel named by the court was in Atlanta attending a regular session of the General Assembly of Georgia and did not appear. He had conferred with his client in Atlanta, and could get no information from him as to the facts of the case to properly prepare a defense. The prisoner informed both counsel designated by the court that he had been "double-crossed" in his experience by lawyers he did not know, and he would tell the facts only when he went on the witness stand on the trial. There was some discussion between the lawyer not present at the trial and the prisoner touching a motion for change of venue, at which time counsel informed his client such a motion would avail nothing in his opinion, as there was no local prejudice against him, .the slain man did not reside, and was almost unknown, in the county, and he thought a fair trial could be had there. On the date the case was finally set for trial, the legislature of Georgia

was in session, and the counsel, a member of that body, testifying he felt he could personally be of no real assistance to the prisoner because of his refusal to co-operate in the preparation of the case, did not attend the trial, going to his legislative duties instead, but arranged with his law partner, a former State Revenue Commissioner, also an experienced lawyer, to take his place, which he did. This was approved by the petitioner.

The other designated counsel was present, with his father, even a more experienced lawyer, and the three assisted in striking the jury, the father and son remaining throughout the trial. When the state offered testimony of witnesses, the petitioner's counsel, after explaining to the court the handicaps they suffered because of their client's unwillingness· to tell them the facts or nature of the defense he wanted presented, were granted the privilege of reserving cross-examination until the accused had made his statement (not under oath under the laws of Georgia) to the jury.

After the evidence had been submitted, and while one of the counsel was making his argument to the jury, the presiding Judge learned that one of the jurors prior to the trial had made certain statements tending to disqualify him as a juror. The statement was that the state patrolman alleged to have been killed by the petitioner on one occasion had arrested the juror's nephew, and had abused him, calling him a vile name, and that the juror thought the patrolman when killed "got what was coming to him". On receiving this information, near the close of the trial, the presiding Judge sent the jury to their room, called counsel for the state and defendant up to the bench, and held a conversation with them, relating what he had heard. The petitioner's counsel who had actively conducted the trial, cross-examining the witnesses, etc., agreed with the Judge that if the juror had made the statement attributed to him he was disqualified. A discussion followed as to declaring a mistrial or excusing this juror and proceeding with the remaining eleven. According to the Judge's testimony, the prisoner's counsel left the bench and went to the prisoner who was in the court room at the time and discussed the subject with him, returning to the bench and informing the Judge he consented for the juror to be excused and for the trial to proceed. The petitioner denies he was consulted. The

counsel has testified (by deposition, being unwell) that he consented to the juror being withdrawn and the trial to go on, in the presence of the petitioner, but that his best recollection was he did not consult his client before so agreeing. It is not disputed that the juror was excused in the presence of the petitioner, and, of course, he knew of it at the time. No objection was made. The petitioner, a white man, was in no sense an illiterate or unintelligent person or inexperienced in the ways of the law. On the contrary, he testified in this court that he had been arraigned in court charged with crime perhaps two dozen or more times prior to the trial in Georgia.

Petitioner's counsel who conducted the trial became ill at the end of it and before he had made an oral argument. His father who sat through the trial made the argument. No objection was made at the time by the petitioner to this substitution of the father for the son to make the argument to the jury in his behalf.

There is some suggestion in the testimony of the petitioner that he wanted certain witnesses subpoenaed and a further continuance of his case. This his counsel deny. The witnesses of whom he now speaks apparently knew nothing about the facts of the case, and I fail to see how their testimony could have been helpful to him.

There was no show of mob violence or any disorder or unseemly conduct of any kind at the trial. Some fifteen state patrolmen were present to aid in preserving order, and, more particularly, to prevent a rescue of the prisoner if rescue were attempted, it having been reported to the state officers the prisoner was a member of an organized band of criminals and on another occasion in a different state such an attempt had been made by his friends or associates.

After conviction the petitioner, through other counsel of his own choosing, filed a motion for new trial. When denied, a bill of exceptions was sued out, and the case reviewed by the State Supreme Court. There were no assignments of error for any irregularity in the trial or because of a denial of any constitutional right. The errors specifically complained of were three in number, two relating to the court's instructions to the jury and one as to admitting certain evidence. There was also the general assignment that the verdict was not supported by the evidence. The case was affirmed. See Coates v. State, 192 Ga. 130, 15 S.E.2d 240.

The petitioner thereafter was again sentenced to die. He then sued out a writ of habeas corpus in the state court, alleging an invasion of his rights under the Constitution of Georgia and the Fourteenth Amendment of the Constitution of the United States, setting up in large part the same contentions now urged in this court. The writ was dismissed; the petitioner remanded. The same counsel now appearing prosecuted that writ—different counsel than the one appearing on the review of the denial of new trial by the State Supreme Court, but all chosen by petitioner. The Supreme Court of Georgia affirmed that judgment also. See Coates v. Lawrence, 193 Ga. 379, 18 S.E.2d 685. No further effort to review was made.

The prisoner was again re-sentenced. When the sheriff and guards called for him at the state prison to return him to Catoosa county for that purpose he endeavored to send a telegram to his counsel who now appear for him, who reside in Atlanta, Georgia, asking them to be present. He gave a guard the telegram and the necessary toll. Under the prison rules the message could not be sent without the warden's approval. When it came to his attention the local telegraph office had closed for the day. He concluded that it would be too late if sent the next day, and the message was never sent. Consequently, his counsel was absent when he was sentenced on May 8th to be executed on May 22, 1942. The explanation for failure by the state prison authorities to exercise some diligence to have the prisoner's message to his counsel delivered, this being a capital case, is not at all satisfactory; but in view of the fact that however this case may be decided petitioner will have to be again re-sentenced, the time for his execution now having passed because of this proceeding, further discussion of their failure in that regard is unnecessary.

The prisoner at various times while being transported from prison to the county where sentence was imposed was carried usually after night fall over circuitous and indirect routes. The state's officers explain this by again saying they wanted to avoid an attempt to rescue.

The petitioner contends the rights guaranteed to him by the Constitution of the

United States, briefly stated, were invaded in the following respects: (a) a denial of the benefit of counsel effectively representing him on the trial, absence of his counsel when the jury returned the verdict and a refusal to permit his counsel to be present when he was last sentenced, in disregard of the Sixth Amendment, (b) a denial of trial by a jury of twelve, arising from the excusing of one juror from the panel under the circumstances I have narrated, contrary to the due process clause of the Fourteenth Amendment, as well as (it is said) contrary to the Fifth and Sixth Amendments and Art. III, § 2, clause 3, and Art. IV, § 2, clause 1, (c) intimidation of the jury and his counsel by the fear of mob violence resulting in failure to provide due process of law required by the Fourteenth Amendment.

My conclusions follow.

 State's counsel have argued with much zeal that the writ of habeas corpus is being used in this case as a substitute for a writ of error; that all of the questions now sought to be raised should have been presented in the motion for new trial; and the judgment of the Supreme Court of Georgia affirming the judgment denying a new trial was an adjudication not only of the issues presented but also of those that might have been. The general rule is correctly stated, for upon the courts of the state, equally with the courts of the United States, rests the obligation to guard and enforce every right secured by the Constitution of the United States. Like most rules of law, however, the general rule has exceptions. At common law an officer's return to a writ of habeas corpus showing that the prisoner was held under final process based upon a judgment or decree of a court of competent jurisdiction closed the inquiry. So it was in this country under the judiciary act of 1789, and so it continued until the act of February 5, 1867, ch. 28, 14 Stat. 385, now embodied in 28 U.S.C.A. § 453, extended the writ to all cases of persons "in custody in violation of the Constitution or of a law or treaty of the United States". See In re Neagle, 135 U.S. 1, 10 S.Ct. 658, 34 L.Ed. 55. There being no doubt of the authority of Congress to thus liberalize the common law procedure in order to safeguard rights guaranteed under the Constitution, it follows as a consequence that where rights under the Constitution are charged to have been violated a person in custody pursuant to a final judgment of a state court of competent jurisdiction may have an inquiry in a court of the United States into the causes of his detention, and where it becomes necessary the court should look through and beyond the record to a sufficient extent to test the jurisdiction of the state court to proceed to judgment against him. "Habeas corpus cuts through all forms and goes to the very tissue of the structure".[4] This does not mean that the result of state appellate review shall be ignored. On the contrary, not only as a matter of comity but upon the much higher plane of proper relations between the State and Federal governments, under our dual system, courts of co-ordinate jurisdiction should forbear to interfere with the processes of each other except in unusual cases. These exceptional cases are sometimes confined to a simple question of jurisdiction of the state court, whether properly undertaken at the outset or lost by reason of something more than a mere irregularity of procedure before final judgment. In a larger and more accurate sense, where a constitutional right of the nature we are to consider has been invaded, they involve the very power and authority of the state itself. "It [the writ] extends also to those exceptional cases where the conviction has been in disregard of the constitutional rights of the accused, and where the writ is the only effective means of preserving his rights. Moore v. Dempsey, 261 U.S. 86, 43 S.Ct. 265, 67 L.Ed. 543; Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791, 98 A.L.R. 406; Bowen v. Johnston, 306 U.S. 19, 24, 59 S.Ct. 442, 444, 83 L.Ed. 455." Waley v. Johnston, 316 U.S. 101, 62 S.Ct. 966, 86 L.Ed. ——, and Frank v. Mangum, supra; Johnson v. Zerbst, 304 U.S. 458, 465, 58 S.Ct. 1019, 82 L.Ed. 1461. In view of what I conceive to be a proper solicitude, where life is at stake, for those liberties which are guaranteed by the Constitution, and the exceptional facts alleged in the petition, the case should not be disposed of on the narrow ground that habeas corpus is not the proper remedy.

██ Before considering the constitutional questions disposition should be made of the plea in bar. At common law the doctrine of res judicata did not extend to a decision on habeas corpus refusing to

---

4 Per Holmes, J. in Frank v. Mangum, 237 U.S. 309, at page 346, 35 S.Ct. 582, at page 595, 59 L.Ed. 969.

discharge a prisoner. Since Salinger v. Loisel, 265 U.S. 224, 230, 44 S.Ct. 519, 68 L.Ed. 989, the federal courts have accepted that rule and conformed to it. It is now well established. Though not an absolute bar, the former proceedings are not to be entirely disregarded, since good faith generally would require a petitioner seeking the writ to present all grounds for relief in one petition and not hold others in reserve merely to form the basis of successive petitions for purposes of delay. There may be a few questions, but only a very few, now raised that were not before presented. Even where the issues are identical the court has considerable discretion to hear the evidence or deny the writ ex parte. Remaley v. Swope, 9 Cir., 100 F. 2d 31(1, 2), 32; Rolfe v. Lloyd, 9 Cir., 102 F.2d 606; United States ex rel. Bruno v. Reimer, 2 Cir., 103 F.2d 341(2), 342. The plea in bar is not a sufficient barrier against examining the facts anew, and it is overruled.

■ The first constitutional questions presented relate to the assistance of counsel alleged by the petitioner to be guaranteed to him under the Sixth Amendment, due process of law under the Fifth and trial by jury under Art. III, § 2, clause 3. These amendments and article are not limitations upon the power of the states but operate upon the national government only —they apply only to trials in the federal courts. This is settled beyond debate by a long line of cases.[5]

■ The same questions will be considered, however, as being properly presented under the Fourteenth Amendment, which, while not expressly incorporating the specific guarantees of Article III and the Sixth Amendment, may under some circumstances be held to include them; and the due process clause of the Fifth and Fourteenth Amendments are in identical language, the former applying to the national and the latter to the state governments. See Betts v. Brady, note state governments. See Betts v. Brady, note 5. In the Betts case the court said: "The due process clause of the Fourteenth Amendment does not incorporate, as such, the specific guarantees found in the Sixth Amendment although a denial by a state of rights or privileges specifically embodied in that and others of the first eight amendments may, in certain circumstances, or in connection with other elements, operate, in a given case, to deprive a litigant of due process of law in violation of the Fourteenth. Due process of law is secured against invasion by the federal Government by the Fifth Amendment and is safeguarded against state action in identical words by the Fourteenth. The phrase formulates a concept less rigid and more fluid than those envisaged in other specific and particular provisions of the Bill of Rights. Its application is less a matter of rule. Asserted denial is to be tested by an appraisal of the totality of facts in a given case. That which may, in one setting, constitute a denial of fundamental fairness, shocking to the universal sense of justice, may, in other circumstances, and in the light of other considerations, fall short of such denial. In the application of such a concept there is always the danger of falling into the habit of formulating the guarantee into a set of hard and fast rules the application of which in a given case may be to ignore the qualifying factors therein disclosed".

■ Where the law of the state requires the appointment of counsel for indigent persons—and the law of Georgia does[6]—certainly in a capital case, where

---

[5] See United States v. Dawson, 15 How. 467, 487, 14 L.Ed. 755; Twitchell v. Pennsylvania, 7 Wall. 321, 325, 19 L. Ed. 223; Spies v. Illinois, 123 U.S. 131, 166, 8 S.Ct. 21, 22, 31 L.Ed. 80; In re Sawyer, 124 U.S. 200, 219, 8 S.Ct. 482, 31 L.Ed. 402; Brooks v. Missouri, 124 U.S. 394, 397, 8 S.Ct. 443, 31 L.Ed. 454; Eilenbecker v. District Court, 134 U.S. 31, 34, 35, 10 S.Ct. 424, 33 L.Ed. 801; Adams v. New York, 192 U.S. 585, 24 S.Ct. 372, 48 L.Ed. 575; West v. Louisiana, 194 U.S. 258, 263, 24 S.Ct. 650, 48 L.Ed. 965; Howard v. Kentucky, 200 U.S. 164, 172, 26 S.Ct. 189, 50 L.Ed. 421; Twining v. New Jersey, 211 U.S. 78, 99, 107, 29 S.Ct. 14, 53 L.Ed. 97; Weeks v. United States, 232 U.S. 383, 398, 34 S.Ct. 341, 58 L.Ed. 652, L.R.A. 1915B, 834, Ann.Cas.1915C, 1177; City of Minneapolis & St. L. R. Co. v. Bombolis, 241 U.S. 211, 36 S.Ct. 595, 60 L. Ed. 961, Ann.Cas.1916E, 505, L.R.A. 1917A, 86; Betts v. Brady, 62 S.Ct. 1252, 1256, 86 L.Ed. ——, decided June 1, 1942; Griffin v. State, 142 Ga. 636, 637 (2), 83 S.E. 540, L.R.A.1915C, 716, Ann. Cas.1916C, 80; Moore v. State, 151 Ga. 648(1-b), 108 S.E. 47; McIntyre v. State, 190 Ga. 872(2), 876, 11 S.E.2d 5, 134 A. L.R. 813.

[6] Georgia Constitution, Art. I, pars. 4 and 5, Georgia Code (1933), §§ 2-104, 2-105.

the defendant is unable to engage a lawyer and is incapacitated by ignorance, illiteracy, physical disability, or the like, to adequately make his own defense, due process of law requires that the court assign counsel for him, competent to serve, and who shall give more than casual or perfunctory service to the prisoner. Lip service only will not do. And the Constitution also requires that a fair opportunity shall be afforded such counsel to consult his client and to prepare a defense against the charge. Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527; Johnson v. Zerbst, supra; Avery v. Alabama, 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377; Smith v. O'Grady, 312 U.S. 329, 61 S.Ct. 572, 85 L.Ed. 859. See, also, Glasser v. United States, 315 U.S. 60, 69, 71, 62 S.Ct. 457, 86 L.Ed. ——; McDonald v. Hudspeth, D.C., 41 F.Supp. 182(6), 187, 188. A person accused of crime is entitled to the assistance of counsel at all stages of the trial, including sentence. "He requires the guiding hand of counsel at every step in the proceedings against him". Powell v. Alabama, supra, 287 U.S. 45, 53 S.Ct. 64, 77 L.Ed. 158, 84 A.L.R. 527, Martin v. State, 51 Ga. 567, and see, also, Reid v. Sanford, D.C.Ga., 42 F.Supp. 300(5), 303. With due recognition of all of these rights comprehended by the Fourteenth Amendment, I am unable to find in this case that the petitioner was denied any right that ought to have been preserved. The competency and experience of the counsel appointed by the court who actually defended him are not questioned, and their character is unassailed. Their failure to move for a change of venue, or for a continuance, is not shown to have injured him in any way. In their opinion, such motions would have been denied, and properly so, they thought, and they so informed him as to a change of venue before the trial. See Pierce v. Hudspeth, 10 Cir., 126 F.2d 337(2), 338.

The absence of one of the designated counsel on the trial, whose law partner took his place, is not shown to have prejudiced any right of the petitioner. That the other designated counsel was suddenly but temporarily incapacitated by illness at the close of the trial, after all the evidence had been submitted, whereby he was prevented from making an argument to the jury, when his father substituted for him and, being equally familiar with all of the evidence, having sat with the son throughout the trial as an associate counsel (though not formally appointed by the court), made an argument that is not criticised or charged to have been lacking in loyalty or effectiveness, as far as I am able to discern, resulted in no harm to the prisoner. See Kent v. Sanford, 5 Cir., 121 F. 2d 216(2, 3), 217. If the case was not well-defended (I do not mean to suggest that it was not—the complete transcript showing all that transpired on the trial is not before me), the blame lies with the petitioner himself, because of his unexplained and undenied conduct in refusing to co-operate with any of his lawyers in preparing a defense, going to the extent of informing them he would tell nothing of the facts to anyone until he made his statement to the court and jury on the trial. He was entitled, however, to have his counsel present when he was sentenced to be executed, and, under the evidence, his constitutional right to the assistance of counsel at all stages of the proceedings was violated. Inasmuch as he must be re-sentenced (the date fixed for his electrocution having passed) that invasion of his rights does not require that he be discharged.

The insistence that due process of law was denied because the prisoner's appointed leading counsel was absent when the jury returned their verdict needs but a word. Admittedly, the accused was present. In the first place, the leading counsel for the petitioner, who conducted the trial, testified unqualifiedly he was present. I accept his testimony as to the fact. But, secondly, if he had been absent, the defendant by his conduct waived his presence. Under the state practice in Georgia a defendant in a criminal case may waive either or both his own or his counsel's presence at the reception of the verdict, and such waiver is to be inferred from the making of a motion for new trial upon other grounds alone. This is a regulation of criminal procedure within the authority of the state to adopt, and violates no provision of the Constitution of the United States. Frank v. Mangum, supra; Lovvorn v. Johnston, 9 Cir., 118 F.2d 704(5, 6), 706. See, also, Frank v. State, 142 Ga. 741(2, 3), 751, 763, 83 S.E. 645, L.R.A. 1915D, 817; Cawthon v. State, 119 Ga. 395, 46 S.E. 897; Wiggins v. Tyson, 112 Ga. 744, 745(2), 38 S.E. 86; Williams v. State, 107 Ga. 721, 722(1), 726, 33 S.E. 648; Vaughn v. State, 88 Ga. 731(1), 735, 16 S.E. 64; Logan v. State, 86 Ga. 266, 270, 12 S.E. 406; Durham v. State, 70 Ga. 264 (4), 267; Sarah (a slave) v. State, 28 Ga. 576.

We come next to the assertion that trial by jury in the constitutional sense was denied because one juror was excused from the panel and the verdict was by the remaining eleven. The testimony of the presiding Judge shows that when this juror was excused the simple statement was made in the presence of the whole panel that both sides consenting he was excused, and he immediately left the jury box. No reasons for excusing him were stated in the presence of the other jurors. There is nothing in the Constitution of the United States requiring the states to provide a jury of twelve in the trial of criminal cases, though the Constitution[7] does require the federal courts to have that number. Trial by jury in a federal court means a trial by jury as understood and applied at common law, and includes all the essential elements as they were recognized in this country and England when the Constitution was adopted. Among those elements was a jury composed of twelve men, neither more nor less. Thompson v. Utah, 170 U.S. 343, 350, 18 S.Ct. 620, 42 L.Ed. 1061. But even in a federal court the government and the defendant may consent during the trial for a juror to be withdrawn and the case to proceed with eleven jurors, and the defendant thus may waive the right to a trial and verdict by a constitutional jury of twelve men. Patton v. United States, 281 U.S. 276, 299, 50 S.Ct. 253, 74 L.Ed. 854, 70 A.L.R. 263. The Fourteenth Amendment neither implies that all trials must be by jury nor guarantees any particular form or method of state procedure. Hardware Dealers' Mutual Fire Ins. Co. v. Glidden Co., 284 U.S. 151, 158, 52 S.Ct. 69, 76 L.Ed. 214; State of Missouri ex rel. Hurwitz v. North, 271 U.S. 40, 42, 46 S.Ct. 384, 70 L.Ed. 818. "The state may abolish trial by jury. It may dispense with indictment by a grand jury and substitute complaint or information. Walker v. Sauvinet, 92 U.S. 90, 23 L.Ed. 678; Hurtado v. California, 110 U.S. 516, 4 S.Ct. 111, 292, 28 L.Ed. 232; Snyder v. Massachusetts, supra [291 U.S. 97, 105, 54 S.Ct. 330, 78 L.Ed. 674, 90 A.L.R. 575]. * * * The state is free to regulate the procedure of its courts in accordance with its own conceptions of policy, unless in so doing it 'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental' ". Brown v. Mississippi, 297 U.S. 278, 285, 56 S.Ct. 461, 464, 80 L.Ed. 682. The Constitution of Georgia does provide that the "right of trial by jury, except where it is otherwise provided in this Constitution, shall remain inviolate"[8], but the not uncommon misconception seems to prevail with some that "the requirement of due process of law took up the special provisions of the state Constitution and laws into the 14th Amendment for the purposes of the case, so that this court would revise the decision of the state court that the local provisions had been complied with. This is a mistake. If the state Constitution and laws as construed by the state court are consistent with the 14th Amendment, we can go no further". Rawlins v. Georgia, 201 U.S. 638, 639, 26 S.Ct. 560, 50 L.Ed. 899, 5 Ann.Cas. 783. Moreover, the Supreme Court of Georgia has held in the earlier habeas corpus case brought by the petitioner in the state court (Coates v. Lawrence, supra) that the evidence then submitted, and now before this court also, was sufficient to authorize a finding that at the time the one juror was excused the accused was consulted by his counsel in the presence of the court and expressly assented, as he had a right to do. The judgment of the Georgia Supreme Court is the final and authoritative answer as to compliance with the state Constitution, and can not be reviewed by this court. Smith v. O'Grady, supra, 312 U.S. at page 330, 61 S.Ct. 572, 85 L.Ed. 859. But even if it were permissible for this court to re-examine the evidence considered by the Georgia Supreme Court on this question, the same conclusion would be reached, and for several reasons. First, because I agree that the preponderance of the testimony shows that the prisoner expressly assented to the juror's being excused. The trial Judge, of experience and high character, who had served as Solicitor General (State's prosecuting attorney) in the Circuit for ten years prior to becoming Judge, testified positively that the prisoner's counsel in the court's presence talked to the accused at the very moment the Judge was considering whether a mistrial should be declared or the trial go on with eleven jurors, and it is inconceivable the subject of the conversation between counsel and accused related to some extraneous subject. The pe-

---

[7] See Art. III, § 2, clause 3, and the Sixth Amendment.

[8] Georgia Constitution, Art. VI, § XVIII, Georgia Code (1933), § 2-4501.

titioner testifies otherwise, but his credibility is not satisfactory to me. His counsel gave only his recollection, though he thought the accused was not consulted. He did not give positive testimony comparable to that given by the Judge. Secondly, a waiver of objection to the discharge of the juror from further consideration of the case is to be inferred from the failure of the accused to assign error in his motion for new trial on this alleged irregularity, which he now asserts was violative of his constitutional rights. Frank v. Mangum, supra, 237 U.S. page 343, 35 S.Ct. 582, 59 L.Ed. 969. The motion for new trial was prepared by counsel chosen by petitioner, and apparently the counsel appointed by the court did not participate in the preparation or hearing of the motion in any way. Lastly, there was a waiver by conduct—silence. The juror was excused in the presence and hearing of the accused. When excused the presiding Judge stated it was being done with the consent of counsel for the state and the prisoner. The petitioner was not an ignorant or illiterate person. He had been arraigned in court many times before; he must have known what was going on. Qui tacet, consentire videtur. It is a familiar rule of evidence that silence, when there is a duty to speak, is tantamount to, and often creates an estoppel against, or waiver of the right of, later saying otherwise.[9]

The final contention is that fear of mob violence at the time of trial so intimidated the petitioner's counsel and the jury that due process of law could not be secured. If this charge were sustained by proof, the trial should be held a nullity. "If the case is that the whole proceeding is a mask—that counsel, jury and judge were swept to the fatal end by an irresistible wave of public passion, and that the State Courts failed to correct the wrong, neither perfection in the machinery for correction nor the possibility that the trial court and counsel saw no other way of avoiding an immediate outbreak of the mob can prevent this Court from securing to the petitioners their constitutional rights". Moore v. Dempsey, 261 U.S. 86, 91, 43 S.Ct. 265, 266, 67 L.Ed. 543. See, also, Frank v. Mangum, supra, 237 U.S. at page 335, 35 S.Ct. 582, 59 L.Ed. 969.[10] But here the proof is wholly lacking. The only suggestion that points to the possibility of mob violence is the unsupported statement of the petitioner that one of the counsel appointed by the court refused to file a motion for a change of venue, saying if he did "we would both get lynched". This the counsel denied in his testimony. The petitioner points to no incident on the trial indicative of fear, coercion or intimidation of any one. At the close of the trial, according to the presiding Judge and other witnesses, petitioner spoke to the Judge as he passed from the court room, shook hands with him, and said, "One thing I know, I have never had a fairer trial than I have had today". The Judge, the Solicitor General, counsel for the accused, and other witnesses have testified without contradiction there was no unseemly conduct upon the trial, the passions of the people of the community were not aroused, the slain man was not a resident of the locality, his family lived elsewhere, and if sentiment locally had developed one way or the other it was sympathetic to the accused because of his physical disability, feet frozen and toes recently amputated, resulting in inability to walk whereby he had to be carried into the court room in an invalid's wheel chair. The presence of state troopers at the trial is pointed to, particularly the unusually large number, and comment is made upon the fact the slain trooper was their fellow-officer. It is said their mere presence was calculated to unduly influence the jury. That possibility standing by itself will not take the place of evidence, especially if it be remembered that the county where the accused was tried was a small, rural county in north Georgia, with few local enforcement officers, and there was fear on their part, whether well-grounded or not, that an attempt to rescue the prisoner from the authorities might be attempted. Assistance, these officers say, they thought was needed. The military authorities were not called upon; the state troopers were. Nothing occurred requiring the presence of ei-

---

[9] Code of Georgia, annotated (1933), § 38-409 and cases cited in the annotations.

[10] See, also, generally on the subject of void conviction, Chambers v. Florida, 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716; Canty v. Alabama, 309 U.S. 629, 60 S. Ct. 612, 84 L.Ed. 988; White v. Texas, 310 U.S. 530, 60 S.Ct. 1032, 84 L.Ed. 1342; Lomax v. Texas, 313 U.S. 544, 61 S.Ct. 956, 85 L.Ed. 1511; Vernon v. Alabama, 313 U.S. 547, 61 S.Ct. 1092, 85 L.Ed. 1513; Ward v. Texas, 62 S. Ct. 1139, 86 L.Ed. ——, decided June 1, 1942.

ther. To hold the jury and counsel were overcome by fear of mob violence on the showing here made would be to act upon pure assumption and nothing more.

No mention has been made by petitioner's counsel of Art. IV, § 2, clause 1 of the Constitution except to say in the petition that it was violated. This clause grants to the citizens of each state all the privileges and immunities of citizens in the several states. The privileges and immunities there mentioned are those "which are fundamental; which belong of right to the citizens of all free governments, and which have at all times been enjoyed by citizens of the several States which compose this Union, from the time of their becoming free, independent, and sovereign". In re Slaughter-House Cases, 16 Wall. 36, 76, 21 L.Ed. 394; Corfield v. Coryell, 6 Fed.Cas. page 546, No. 3,230. The article, in effect, prevents a state from discriminating against citizens of other states in favor of its own. Hague v. C. I. O., 307 U.S. 496, 511, 59 S.Ct. 954, 83 L.Ed. 1423. Since no evidence has been offered, and no argument adduced, to show a violation of this article, and I am able to find none, the burden being upon the petitioner to sustain his allegations, my conclusion must be that the charge in the petition has not been established. See Smith v. Lawrence, 5 Cir., 128 F.2d 822, decided June 16, 1942.

The writ of habeas corpus is discharged, and the petitioner remanded to the custody of the warden of the Georgia State Prison.