## DURHAM vs. THE STATE OF GEORGIA.

1, 2, 3. The verdict in this case was not contrary to law, evidence or the weight of the evidence.

4. Where during the trial of a criminal case, by the consent and under the express wish of counsel for defendant, the jurors were allowed to use the court room at night for their comfort, and after the presiding judge had called the attention of counsel to the fact that the jurors might have access to the Code and other law books in the court room and expressed doubts as to the propriety of allowing them to remain there, counsel for defendant replied that he did not care if they did have access to the books, and insisted on their being allowed to remain,—it furnished no ground for a new trial, that one of the jurors in fact read to his fellow jurors from the Code the definitions of murder, express and implied malice and manslaughter, and commented on the same from the judge's seat in the court room. The direct waiver of defendant's counsel was binding on him.

5, 6. The fifth and sixth grounds of the motion for a new trial, not being certified, cannot be considered.

7. Where the judge gave in charge the substance of certain written requests, and after having completed the general charge, inquired of counsel if there was anything else they would have him charge, to which one of counsel for defendant replied "no," that defendant was entirely satisfied with the charge, it furnished no ground for new trial that the language of the requests was not given in charge.

8, 9. These grounds were not certified.

10. Under the evidence, the law of involuntary manslaughter has nothing to do with this case.

(a.) If one who was engaged in a personal difficulty with another fired upon him with a pistol, and, as the latter ran away, again

Durham *vs.* The State.

fired at him, but missing him killed a third person who was near by, such killing would be murder, and not involuntary manslaughter.

11. Where a witness introduced by the state showed that he was an unwilling witness, and seemed to be contumacious and equivocal, there was no error in allowing the solicitor general to lead him.

12. Where one ground of a motion for new trial was the disqualification of a member of the jury, arising out of previous declarations alleged to have been made by him adversely to the defendant, and the affidavit of the juror in explanation and denial of the alleged declarations completely destroyed the objection to him, especially in connection with affidavits·of others as to his good character, there was no error in refusing a new trial on that ground.

(*a.*) There was no affidavit of the defendant's counsel showing that they were ignorant of this disqualification of the juror. Such affidavits are necessary.

13. The fact that a young lady, who was a witness for the defendant in a criminal case, was greatly affected by the circumstances of her situation, was, of itself alone, no legal reason why the defendant's counsel should have been permitted to lead her in her testimony; nor is any sufficient reason shown why it was error to refuse to allow this to be done.

14. The court refused to allow defendant's counsel to illustrate with a pistol how the shooting was done and how the defendant held the pistol at the time, the judge stating that he did not want a pistol handled loosely about the court-house, and the illustration was then made with a pencil. Subsequently the illustration was made by another witness with a pistol:

*Held,* that this refusal of the court furnished no ground for new trial.

15. 16. These grounds are not certified, and must be disregarded.

March 27, 1883.

Criminal Law. Practice in Superior Court. Charge of Court. Evidence. Jurors. Witness. Before Judge Hood. Terrell Superior Court. May Term, 1882.

Durham was indicted for murder, and on the trial was convicted, with a recommendation to mercy. He moved for a new trial, which was refused, and he excepted. The substantial facts disclosed by the testimony are set out in the tenth division of the decision. For the other facts see the decision.

Pickett & Parks; Fort & Simmons; Kennon & Hood, for plaintiff in error.

CLIFFORD ANDERSON, attorney general, by JACKSON & KING; J. H. GUERRY, solicitor general; L. C. HOYL; R. F. SIMMONS, for the state.

CRAWFORD, Justice.

The assignment of error in this case is the refusal of the judge to grant a new trial, upon the various grounds set out in the motion therefor.

1, 2, 3. The first three are that the verdict is contrary to law, contrary to evidence, the weight of evidence, and contrary to law and evidence. A close examination of the entire record satisfies us that these grounds are not well taken.

4. The fourth is that one of the jurors, H. G. Lamar, during their deliberations over the verdict, read to his fellow jurors from the Code of 1873, the definition of murder, express and implied malice, and manslaughter; and commented on the same from the judge's seat in the court room.

Touching this ground, the judge says that, for the comfort of the jurors at night, they had been allowed the use of this room during the trial, not only by the consent of the counsel for the defendant, but by his express wish that they should be allowed to do so. The judge says that he suggested that they might get the books in the court room, when Mr. Simmons, defendant's counsel, said in reply that "he did not care; the more they read, the less they'd know." After they had been charged by the judge, and the case submitted, and before the adjournment for the night, the counsel for the state and the defendant were called to the bench privately, and told by the judge that he had doubts on his mind whether they should be allowed, after entering upon the consideration of their verdict, to still occupy the court room, as they would have access to the Code and other law books ; whereupon Mr. Simmons, defendant's counsel, immediately replied, that

he did not care if they did, and insisted on their being allowed to remain. With this unqualified consent, given after the statement to counsel about the books, the jury were allowed to occupy the room as before.

The refusal of the judge to grant a new trial on this ground was proper and legal. And we do not see exactly upon what reason counsel can justify such an attempt to take advantage of an agreement so deliberately entered into, privately with the judge, and publicly in open court. It may be that the importunity of a condemned client overcame that just sense of propriety which otherwise we know counsel must have recognized.

Looking, then, to the question of law taken in this ground we say that the waiver by the prisoner's counsel was binding upon him, and upon the following authority:

In the case of *Sarah, a slave, vs. The State*, 28 *Ga.*, 581, this court say: " And we lay down the broad proposition that, as a prisoner may waive even a trial itself, and be capitally punished upon his own confession of guilt, he may waive any minor right or privilege." Again in the case of *Hoye vs. The State*, 39 *Ga.*, 719, it was held that " a defendant who is charged with a crime involving his life or liberty, is not held to have waived anything, unless by express agreement for the purposes of the trial." And further, the judge delivering the opinion for the court said: " He waives nothing by implication or intendment. And unless he expressly waives an objection to the adjournment, with a view to a trial which is to bind him, he may take advantage of it even after verdict." It will also be seen in the case of *Martin vs. The State*, 51 *Ga.*, 567, that a defendant may lose a privilege or a right by a clear and distinct waiver thereof.

That which was done in the case at bar, leaves no room to doubt but that this ground, under the authorities cited, was properly overruled.

5, 6. The fifth and sixth grounds, not being certified to, cannot be considered.

v 70–18

7. The seventh ground is based upon the refusal of the judge to give certain written charges requested by defendant's counsel.

The judge states that he gave the substance of the requests in his general charge, and after he had completed it, out of abundant caution, he inquired of counsel if there were anything else they would have him charge, when Mr. Simmons of counsel for defendant arose in his place, and in the presence of the jury said "No," that "defendant was entirely satisfied with the charge," which he understood to be a withdrawal of the charges requested.

8, 9. These two grounds the judge also refused to certify.

10. Because the judge said to the jury, "Under my view of this case, involuntary manslaughter has nothing to do with it."

The correctness of this statement of the judge depends upon the facts shown by the proofs. If in any possible view of the case a verdict for involuntary manslaughter might have been found by the jury, then the judge erred; otherwise he did not.

The record shows that the cause of the quarrel which resulted in the death of the deceased, originated between the defendant and one J. B. Hays, in which it is shown by the state that a dispute arose between them about the weight of some meat, which the defendant was purchasing from Hays, when the defendant gave Hays the d—d lie, drew his pistol and presented at him, upon seeing which Hays gathered a weight, knocked up the pistol with his other hand, but not in time to protect himself entirely from the shot which struck him, and after the fire dropped the weight, turned away and started out of the house. The firing of the pistol attracted the attention of White, the deceased, who was outside, but came in quickly, and going up to the defendant endeavored to take hold of him, when according to the best recollection of the witness as to what

passed, the defendant asked White if he had taken it up, and threw up his pistol hand, fired and White was killed.

The theory of the defendant was that Hays took the weight first, caught the defendant by the shoulder and, with an oath, threatened to fix him, when the defendant fired upon him, and as 'quickly as he could cock his pistol fired it at him again, when the shot took effect upon White. Under this proof, taking either theory of it, the killing of Hays would not have been justifiable, but would have been an unlawful act which in its consequences tended to destroy the life of a human being, and would have been punishable by death or confinement in the penitentiary. Such a crime, says the Code, §4327, can never be held to be involuntary manslaughter, but shall be deemed and adjudged to be murder. 58 *Ga.*, 212–215.

But taking the facts as they undoubtedly were, from the testimony of all the witnesses under their direct and cross examination, and the truth is, that after Hays was shot, he dropped the weight and endeavored to escape the second fire by trying to get out at the front door of the house. And that White was endeavoring to prevent the defendant from firing again when he approached him; but defendant, supposing that he intended to befriend Hays, fired at and killed him. Even if he had been firing at Hays, who was really fleeing from him, and had gotten eighteen or twenty feet away, and killed White, it was murder, and the judge was right in saying to the jury that involuntary manslaughter had nothing to do with the case. 52 *Ga.*, 611; 55 *Ib.*, 697.

11. Because the court permitted the solicitor general to lead Sims, a witness for the state. As to this ground, the judge states that this witness was an unwilling witness, seemed to be contumacious and equivocal; he therefore told the state's counsel that he might lead him if he desired. There was no error in so ruling.

12. The twelfth ground relates to the disqualification of one of the jurors, arising out of some previous alleged

declarations which were adverse to the defendant. The affidavit of the juror himself in explanation and denial of the declarations alleged to have been made by him, completely destroys the objection to him, and especially when considered in connection with affidavits of other parties as to his good character. 58 *Ga.*, 296, 299.

Besides, there was no affidavit from any of the defendant's counsel showing that they were ignorant of this disqualification of the juror. Such affidavits are necessary. 59 *Ga.*, 474; 56 *Ib.*, 401; 20 *Ib.*, 660.

13. Because the court erred in not allowing defendant's counsel to lead Miss Sallie Durham, one of defendant's witnesses. There is no sufficient reason shown, why the rule should have been changed as to this witness; nor that the judge exercised his judicial right improperly. The fact that the young lady was greatly affected by the circumstances of her situation, was, of itself alone, no legal reason why the defendant's counsel should have been permitted to lead her in her testimony.

14. This ground is approved with such qualifications as to render it exceedingly uncertain as to what did actually transpire. The complaint, however, seems to be that the judge refused to allow defendant's counsel to illustrate with a pistol, by A. J. Hays, how the shooting was done, and how the defendant held the pistol at the time. This the court says that he directed stopped, as he did not want a pistol handled loosely about the court house, and that the illustration was then made with a pencil. It further appears, however, from the evidence in the record, that subsequently Wm. Bozeman, a witness for the state, did illustrate with a pistol what was wanted.

15, 16. These two grounds are not certified to and must be disregarded.

We have thoroughly examined this entire record, and are forced to the conclusion reached by the jury, that the plaintiff in error is guilty of murder, and must abide the result of his unfortunate act.

Judgment affirmed.