### 38026. GIBBONS v. THE STATE.

WELTNER, Justice.

Clifton Edward Gibbons was indicted for the murder of Lloyd O. Agner, convicted of that offense by a jury in Burke County, Georgia, and sentenced to life imprisonment. On appeal, he presents eleven enumerations of error, the last contending that "the evidence is insufficient as proof beyond a reasonable doubt that the defendant committed the crime of murder." We reach this enumeration first. *Lewis v. State,* 248 Ga. 566 (285 SE2d 179) (1981).

To establish the circumstances of the case, we set out the statement of facts contained in the brief submitted by the District Attorney of the Augusta Judicial Circuit:

"On January 9, 1980 the badly decomposed body of an elderly white male was found tied to a tree in a heavily wooded section of Burke County. The corpse was bound to the tree by a fan belt and other materials. It was clothed in a green work shirt and green work pants, a white tee shirt and a yellow sweater. A felt hat was also discovered laying on the ground in close proximity to the body.

"A subsequent examination of the deceased at the State Crime Lab revealed evidence of its identity and of the probable cause of its death. A Georgia Power bill was found in the right-hand shirt pocket with the name Lloyd Agner thereon. An old grocery receipt, a receipt for a life insurance payment and a water bill issued in the same name

were additionally discovered on the deceased's person.

"Examination into the causes of death revealed that a compression imprint and an incise wound had both been made in the neck area of the body. The autopsy also revealed that a considerable amount of internal bleeding had occurred in the chest area before the dead person expired. Several of his ribs were found to be broken. In the opinion of the expert forensic pathologist who conducted the examination, any one of these wounds could have been mortal.

"The evidence concerning the identity of this body corresponded very closely to the description of a resident of neighboring Richmond County, Lloyd O. Agner, who had disappeared some three months earlier. Mr. Agner's daughter, Judy Dunn, positively identified the hat found at the place where the body was discovered and the sweater on the corpse as articles of clothing belonging to her father. Jeannette O. Richardson, a young lady who rented a house trailer from Mr. Agner, said that he generally liked to wear green-colored work clothes and a yellow sweater of which he was particularly fond. Shirley Greaves, who worked at a small grocery store close to Mr. Agner's residence, testified that she last saw him wearing a green pair of pants and a green shirt, a white tee shirt and a yellow sweater prior to the time that he disappeared.

"Mrs. Greaves positively swore that she last saw Mr. Agner in her store on October 8, 1979. Mrs. Richardson similarly said that the last occasion on which she saw Mr. Agner's truck parked in the driveway of his home was the morning of October 8, 1979. Joe Peel, an insurance agent who carried Mr. Agner's life insurance, said that he last met with Mr. Agner on October 3, 1979 when Mr. Agner paid his monthly insurance premium. Peel also cashed Mr. Agner's social security check in the approximate amount of $300.00. According to other testimony adduced at trial, Mr. Agner had previously tried to cash his check at Cantrell's Grocery on that same date.

"Further investigation revealed that at approximately 11:00 a.m. on October 10, 1979 a truck later identified as belonging to Mr. Agner was driven into the car lot of Parrish Motor Company, a used car dealership in Augusta, Georgia. The individual driving the truck traded it in on a 1972 Plymouth Satellite automobile. During the course of this transaction this person identified himself as Lloyd O. Agner. He signed all documents pertaining to the sale of the truck and the purchase of the car in conformity with this identification. Mr. Parrish, the owner of the used car lot, later said that the defendant, Clifton Edward Gibbons, was the individual who held himself out to be Lloyd Agner at the time that Mr. Agner's truck was sold.

"Mr. Parrish's testimony concerning Gibbon's possession and disposal of the truck was corroborated by the details of an incident

that occurred several days later in Burke County. On October 13, 1979 a 1972 Plymouth Satellite was involved in a single car accident occurring on Road 216 in that county. When Lt. Thomas C. Murray of the Burke County Sheriff's Department appeared at the scene of the wreck, the driver of the car identified himself as Clifton Edward Gibbons and produced a driver's license to that effect. However, when the officer requested that Mr. Gibbons produce evidence of his ownership of the wrecked car, Gibbons produced a bill of sale made out to Lloyd O. Agner. The VIN numbers on this bill of sale, on the certificate of title to the car that Mr. Parrish sold and on the car involved in the accident were identical.

"A thorough crime scene investigation of the place where the body was found and an examination of Mr. Agner's truck thereafter revealed that the truck had in all likelihood been present when the criminal act at issue occurred at that place. According to Investigator Gary Theisen of the State Crime Lab, the width of the tire tracks that were discovered there corresponded very closely to the width of the tires on Mr. Agner's truck. Theisen further said that the spacing of certain scratches and dents on the vehicle significantly correlated with the measurements of damage done to trees growing close by the place where the corpse was found. Finally, the investigator concluded that based on his measurements of the tire tracks, of the damage done to the trees and to the truck and of the placement of the body of the deceased when it was discovered, it was Theisen's opinion that the truck had struck the body on at least one occasion.

"Another circumstance which connects Gibbons to this incident is an event that occurred on October 8, 1979, the same date on which Lloyd O. Agner was last seen alive. Late in the afternoon of that day Gibbons and some friends came into Cantrell's Grocery located in Blythe, Georgia. Mrs. Cantrell, the proprietress of the store who waited on Gibbons and his companions, said that he had an unusually large amount of money on his person at that time. More specifically, she said that he was a frequent patron of her business and that it was highly unusual for him to have or to spend as much cash as he possessed on that occasion.

"The above stated facts and circumstances surrounding Mr. Agner's death were the basis of the murder charge lodged against the defendant, Clifton Edward Gibbons, by the State of Georgia. All of the probative evidence brought forward at trial against the appellant was circumstantial in nature. The appellant did not call any evidence in his behalf which would have tended to show that he was not involved in this crime, and he did not himself take the stand and testify. The appellant was tried before a jury in the Superior Court of Burke County from June 17, to June 19, 1981 and was duly convicted

of murder."

In further illustration of the factual situation, we set out a portion of the Statement of Facts as contained in the brief filed by the Attorney General:

"Officer Dyke's investigation also revealed that in late September 1979 two black males who lived at the Roberson house [where appellant lived with his girl friend, Alice Roberson, and her brother, Bobby Roberson] did plumbing work for Agner. At Roberson's house, Appellant told Officer Dyke that he was the one he needed to speak with and that he wanted to clear up the rumor that he had something to do with Agner's disappearance. Officer Dyke testified that prior to that time, he had not heard any such rumor. Appellant told Officer Dyke that he and Bobby Roberson had done plumbing work for Agner and during that time Agner's pistol disappeared. Appellant stated that he discovered that Bobby took the pistol, and Appellant returned it to Agner.

"Beginning on November 18, 1979 Officer Dyke interviewed Bobby Roberson approximately five times. Bobby told Officer Dyke and Larry Hendrix of the District Attorney's office in the Augusta Judicial Circuit that Appellant had told him that Agner was dead. Bobby stated that after he and Appellant did plumbing work for Agner, Appellant asked if he had seen 'all the money' that Agner had and told Bobby that he was going to get it. Several days later, Appellant was discussing Agner's disappearance with Bobby and stated that 'I can tell you something that will scare your heart out.' Appellant then told Bobby that Agner was dead. Appellant told Bobby that he and Agner went riding in Agner's truck and Appellant told Agner to stop. Appellant [told Bobby that he] walked around the truck and cut Agner's throat. Appellant [told Bobby that he] drove to a wooded area where he tied Agner to a tree and made him drink a pint of whiskey. Appellant did not give Bobby any further information about the murder.

"On the witness stand, Bobby refused to answer any questions asked by the State or the Court. After several discussions with the Court and counsel, Bobby denied giving any statements implicating Appellant in the murder.

"Alice Roberson, Appellant's girl friend, and Bobby testified that Officer Dyke offered them a bribe. Officers Dyke and Hendrix denied any bribes or offers were made."

The statement of facts contained in Gibbons' brief is not materially inconsistent with the foregoing.

The evidence is amply sufficient to support a finding by a jury that Lloyd O. Agner was murdered. The question is whether it is sufficient to sustain a finding that Edward Gibbons was the

murderer.

Had the State's witness, Bobby, testified as anticipated by the State, all of the essential elements of proof would have been present, as Gibbons' statement to Roberson would have been supported amply by corroborating circumstances. Roberson refused, however, after repeated questioning to implicate Gibbons in any way, or to testify in any manner consistent with his pre-trial statements to Investigator Dyke. Both Dyke and his associate were permitted to testify before the jury as to Roberson's statements.

Evidence which is admissible for impeachment purposes *only* cannot serve as evidence in support of an essential factual contention. Under the traditional rule as applied in Georgia, other than to impeach Roberson's statement that Gibbons had not discussed Agner's death with him, the testimony of Dyke and Hendrix would be of no probative value. *Dickey v. State,* 240 Ga. 634 (3) (242 SE2d 55) (1978).

The other evidence submitted to connect Gibbons to the death of Agner is his recent possession of Agner's truck; the testimony of the proprietress of a store that on the date when Agner was last seen alive Gibbons was observed by her to be in possession of an unusually large amount of money, and that it was highly unusual for him to have or spend as much money as he did on that occasion; and investigator Dyke's testimony that Gibbons stated that "he wanted to clear up a rumor that had been going around . . . that he had something to do with Lloyd Agner's disappearance and that Gibbons stated to him that he had done some plumbing work for Mr. Agner at which time a pistol was missing, whereupon Gibbons discovered that Roberson had the pistol and returned it to Agner."

Excluding Bobby Roberson's declaration, the evidence is, at best, limited. Nonetheless, we find it sufficient to sustain Gibbons' conviction, because we now hold that the declaration of Bobby Roberson to Officers Dyke and Hendrix may be considered as *substantive evidence* of the guilt of the accused.

Stated differently, a prior inconsistent statement of a witness who takes the stand and is subject to cross-examination is admissible as substantive evidence, and is not limited in value only to impeachment purposes.

Heretofore, the use of prior inconsistent statements in Georgia has been restricted to impeachment, except in cases where they come under some other exception to the hearsay rule. The reasons often given for this restriction are that the prior statement may not have been made under oath, the declarant is not subject to cross-examination, and the statement is not made in the presence of the jury. State v. Saporen, 205 Minn. 358 (285 NW 898) (1939).

These arguments have been criticized by commentators, who suggest that the oath is not as strong a guaranty of truth as once it may have been, and that the requirements that the jury observe the declarant and that the defendant have an opportunity to cross-examine are met where the declarant takes the stand and is subject to cross-examination. The assertion by a person that the declarant made a prior statement is not itself hearsay, and the jury can determine the credibility of the witness on that point. With respect to the truth of the prior statement, the jury has the opportunity to observe the declarant as he may repudiate or vary his former statement, and as he is cross-examined. Thus, the jury can determine whether to believe the present testimony, the prior testimony — or neither. In addition, commentators point out that prior statements, of necessity, are made closer in time to the event in question, when memories are fresher, and that the traditional rule requires the courts to give unrealistic and confusing instructions to the jury. See 3A Wigmore, Evidence (Chadbourn rev.) § 1018; McCormick, Handbook of the Law of Evidence, 2d ed., § 251; Morgan, *Hearsay Dangers and the Application of the Hearsay Concept,* 62 Harv. L. R. 177, 192 et seq. (1948).

As a result of these considerations, many states now allow prior inconsistent statements as substantive evidence where the declarant takes the stand and is subject to cross-examination. See Wigmore, supra, § 1018, n. 3 and supp. In California v. Green, 399 U. S. 149 (90 SC 1930, 26 LE2d 489) (1970), the United States Supreme Court upheld this rule against constitutional attack. See also United States v. Insana, 423 F2d 1165 (2d Cir. 1970); United States v. De Sisto, 329 F2d 929 (2-6) (2d Cir. 1964); Di Carlo v. United States, 6 F2d 364 (7) (2d Cir. 1925).

In the present case, Bobby Roberson took the stand, and, after first refusing to answer any questions, denied having heard the defendant make any incriminating statement, and denied relating any such statement to the police. He was cross-examined by the defendant's attorney, in the course of which he repeated his denials and suggested that the officers attempted to extract incriminating statements from him by means of a bribe. (Bobby Roberson, thirteen years old at the time of trial, was the younger brother of Gibbons' girl friend, living in the same household with his sister and the defendant. Throughout his testimony, the District Attorney continually admonished him to look to the jury in giving his answers, and not to members of his family). Applying the prior inconsistent statement rule which we now adopt, the testimony of Officers Dyke and Hendrix as to the prior statements of Roberson was admissible as substantive evidence of the guilt of the accused, in the nature of an

admission. The evidence is thus sufficient as proof beyond a reasonable doubt that the defendant committed the crime of murder, and the eleventh enumeration of error is without merit.

"The object of all legal investigation is the discovery of truth." Code Ann. § 38-101. We believe that the adoption of this rule will increase the capacity of our criminal justice system to discover the truth, making more certain the freeing of the innocent and the convicting of the guilty — which is, of course, its chief end.

Heretofore, prior inconsistent statements have been limited in use to the discovery of perjury. This rule will extend its potential to the discovery of truth.

We foresee these salutary effects:

(a) Once a declaration is made, both the State and the defense are accorded some measure of protection from the erratic or unpredictable witness, in that his declaration can be considered substantively where the witness appears and is subject to cross-examination, notwithstanding variant testimony from the stand.

(b) Similarly, both sides are assured a measure of protection against efforts to influence the testimony of a witness, as the prior declaration is no longer *effectively* revocable at the will of the witness.

(c) For the same considerations, witnesses are protected from improper attempts to influence testimony — the potential gain from that impropriety being diminished substantially by the adoption of this rule.

"If, from all that the jury see of the witness, they conclude that what he says now is not the truth, but what he said before, they are none the less deciding from what they see and hear of that person and in court. There is no mythical necessity that the case must be decided only in accordance with the truth of words uttered under oath in court." Judge Learned Hand, in Di Carlo v. United States, 6 F2d 364, 368, supra.

Turning to the other enumerations of error, the evidence was sufficient to establish the elements of causation and the identity of the victim, and the eighth and ninth enumerations of error are without merit.

The trial judge did not abuse his discretion in allowing the State attorney to lead the recalcitrant witness, Bobby Roberson, and the fifth enumeration of error is without merit. *Durham v. State,* 70 Ga. 264 (11) (1883). *English v. State,* 234 Ga. 602 (216 SE2d 851) (1975).

Roberson testified that he had no recollection of incriminating statements made by Gibbons. A proper foundation for the use of the prior inconsistent statements was laid by evidence that the police

officers on several occasions had discussed with Roberson his expected testimony implicating Gibbons. Roberson was questioned about his prior statements and given a chance to explain or deny them. Code Ann. § 38-1803. The sixth enumeration of error is therefore without merit.

The trial judge did not abuse his discretion in allowing into evidence photographs of Agner's truck, as these were adequately identified by Agner's daughter. *Johnson v. State,* 158 Ga. 192 (2) (123 SE 120) (1924). Nor was it improper to allow into evidence photographs of the scene of the death. *Mize v. State,* 240 Ga. 197 (1) (240 SE2d 11) (1977). The trial judge did not abuse his discretion in his comments and instructions as to the use of the photographic evidence. *Bryant v. State,* 157 Ga. App. 62 (1) (276 SE2d 115) (1981); See Code Ann. § 81-1104. The first and third enumerations of error are without merit.

The trial judge did not err in allowing an investigator to testify that he went to the scene of the crime after receiving a call from one who stated that a body had been found tied to a tree. The second enumeration is without merit.

It was not error to admit documentary evidence relating to the single car accident in which Gibbons was involved, as it tended to show that Gibbons was the man who originally traded in Agner's truck, evidence of *identification. Smith v. State,* 238 Ga. 581 (3) (234 SE2d 500) (1977). The fourth enumeration of error is without merit.

Calling an unlisted witness in rebuttal is not error. *Mize v. State,* supra, at 199. Under the facts of this case it was not error to allow Officer Hendrix to testify in rebuttal, although he had not been sequestered. See *Jordan v. State,* 247 Ga. 328 (10) (276 SE2d 224) (1981). The seventh enumeration of error is without merit.

During the closing argument the District Attorney asked, "And what was the defense? Where was the defense?" It is not error for a prosecutor to comment that a defendant has produced no witnesses or evidence. *Classic Art Corp. v. State,* 245 Ga. 448, 449 (265 SE2d 577) (1980). To the extent that the comment in this case implied that there was any burden on the defendant to produce evidence, the error was corrected by specific instructions from the bench, and the tenth enumeration is without merit.

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 3, 1982.

*Flanagan & Neely, Vernon J. Neely,* for appellant.
*Sam B. Sibley, Jr., District Attorney, Charles R. Sheppard, Leon Barfield, Assistant District Attorneys, Michael J. Bowers, Attorney*

*General, Virginia H. Jeffries,* for appellee.