41651. WILLIAMS v. THE STATE.
(324 SE2d 440)

GREGORY, Justice.

The appellant, Victor Williams, was convicted by a jury in Cobb County for the armed robbery and murder of Michael O'Hara. Appellant was sentenced to consecutive life terms in the penitentiary. He brings this appeal from the denial of his motion for a new trial. We affirm.

During the early morning hours of August 31, 1981, the Cobb County Police Department received a call that there had been a shooting at the McDonald's Restaurant on Windy Hill Road. The police arrived at approximately 4:20 a.m. and found the body of the victim, the night manager of the restaurant, near a freezer in the basement area. The victim had suffered gunshot wounds in his left thigh, in his left forearm and in the back of his head. Two .38 caliber bullets were later recovered from the body and two more were recovered in the immediate vicinity of the body. The victim's car was parked outside with one of the tires slashed. He was last seen alive around midnight on August 30th by two employees who left the victim at his desk doing some bookkeeping. When the two employees left, the res-

taurant was closed and all the doors were locked.

The body of the victim was discovered by appellant, who also summoned police. When police arrived on the scene they were met by appellant and Calvin Scott. Both appellant and Scott were employed at McDonald's as maintenance men. They were scheduled to begin work at 4:00 a.m. that morning. Scott testified he arrived at work at 4:20 a.m. to find appellant, who notified him that the victim had been shot and robbed. Appellant told police that he came to work as usual that morning, unlocked the door with his key, and noticed the open safe and loose money strewn about the floor. Appellant claimed he found the body in the basement area and called police.

Lieutenant Carlton Morris of the Cobb County Police Department received a call later that day from the DeKalb County Police that an inmate in the county jail, Benjamin Davis, had information about the case. Davis told police and later testified at trial that he had known the appellant for seven or eight years and that he had known the appellant's girl friend, Mary Wyche, since childhood. Davis related that appellant had approached him earlier that month to get him to help rob the McDonald's where he worked. Appellant said he needed Davis' help in the robbery "because he [appellant] said the man knew him and if he had to go in there he had to shoot the man because the man knew him." Davis agreed to help the appellant. However, on the night of the murder Davis had been arrested in DeKalb County and failed to meet the appellant. In September 1981, Davis was out of jail on bond and saw the appellant who told him that he had committed the McDonald's armed robbery and murder. Davis explained his motive for testifying was that he had done wrong all his life but had never killed anyone and thought no one else should kill either.

In 1982, Lt. Morris learned that the murder weapon, a nickel plated Charter Arms .38 caliber revolver, had been used in another armed robbery and murder in DeKalb County. Through interviewing a participant in that case, Morris was able to trace the whereabouts of the gun and recovered it in April 1983. He then traced the gun through numerous individuals back to Mary Wyche and ultimately to appellant. All of the other owners of the weapon testified at trial. Lt. Morris tried unsuccessfully to contact Mary Wyche for a substantial period of time. In July 1983, Ms. Wyche contacted Lt. Morris and gave a statement regarding her knowledge of appellant's participation in the O'Hara murder. In her statement to police and later to the grand jury, Ms. Wyche related how the appellant was in dire need of money after a brief hospital stay. Appellant told her he could obtain the money by robbing the McDonald's where he worked. Appellant and Davis had planned to commit the robbery together, but on the appointed date, Davis failed to show up. On the night of the murder

appellant drove home at a high rate of speed. His clothes were splattered with blood and he was carrying a money pouch containing a large amount of money. Ms. Wyche's description of the pouch was consistent with the type of money pouches used at McDonald's. Appellant told her when he entered the restaurant the victim was doing some paperwork and the safe was open. He ordered the victim to the basement area near a freezer, told him to turn around, and shot him several times striking the victim in the arm, leg and in the back of the head. Appellant told her that prior to entering the restaurant, he took a hawkbill knife and punctured the victim's tire to prevent any potential escape. Appellant said he had to kill the victim because he could identify him and put him away. Ms. Wyche told police and the grand jury that she was afraid to testify against appellant because he had threatened her on several occasions, placed a gun to her head once and said he had to get rid of her because she was the only one who could put him away.

At trial, Ms. Wyche testified that she and appellant were living together at the time of the murder. She acknowledged that she had in fact made the above statement to Lt. Morris and the grand jury. However, Ms. Wyche testified that she lied in her statement and that the information contained therein was not correct. She stated at the time she made the statement she was under the influence of drugs and did not know what she was doing. Ms. Wyche testified she lied to authorities because she was mad at appellant and wanted to get back at him. She also testified she lied when she said she was afraid to testify and further stated she was not afraid of appellant.

After hearing Ms. Wyche testify that she lied in her earlier statements, the prosecution plead surprise and proceeded to cross-examine her. The prosecutor then offered the testimony of the district attorney and Lt. Morris in an effort to impeach Ms. Wyche. During the direct examination of the district attorney, the following colloquy occurred:

"Q. Did she indicate to you and Lt. Morris that she was afraid of anyone if she testified?

"A. The purpose of the meeting on the 11th of August was to talk to me concerning her fears if she would have to testify, what procedures she would have to go through. On the 11th, as well as again on the 25th, before the grand jury, she told me and the grand jury of the fears of testifying because of what would happen to her if she had to testify in court. She feared Victor because of his *violent nature*, as well as his family, if she testified." (Emphasis supplied.)

At that point, defense counsel made a motion for a mistrial on the ground the above-quoted testimony improperly placed his character in issue and was, therefore, inadmissible. The trial court denied appellant's motion for a mistrial. In this appeal, appellant contends

the trial court's ruling on the motion was error.

1. These facts present a situation governed by three recent opinions of this court. In brief, we have before us a case in which a witness gave incriminating statements to the prosecution and consistent incriminating testimony before the grand jury. However, at trial, the witness completely repudiated what was previously said and gave exculpatory testimony. Under the rationale of *Davis v. State*, 249 Ga. 309 (3) (290 SE2d 273) (1982), and *Ranger v. State*, 249 Ga. 315 (2) (290 SE2d 63) (1982), the prosecution was entitled to impeach Ms. Wyche with her prior inconsistent statement and testimony. It was the former statement and testimony which contained evidence of defendant's violent character now complained of. But, as we held in *Davis*, supra, if evidence is relevant to an issue in the case, it is not inadmissible because it incidentally puts the defendant's character in issue. Was evidence of defendant's violent character and actions toward Ms. Wyche relevant to an issue in the case? Ms. Wyche admitted she gave the former statement and testimony but testified at trial she had lied at the time. The crucial issue for the jury was to determine on which occasion the witness told the truth. If the defendant was a person of violent character and if he had threatened the witness on occasions so that she was afraid to testify against him at trial, that is relevant evidence to aid the jury in deciding when the witness was being truthful. *Gibbons v. State*, 248 Ga. 858 (286 SE2d 717) (1982). The trial court did not err in denying appellant's motion for a mistrial.

2. We have reviewed this evidence in the light most favorable to the prosecution and find that any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 7, 1985.

*J. M. Salome*, for appellant.
*Thomas J. Charron, District Attorney, Debra H. Bernes, Assistant District Attorney, Michael J. Bowers, Attorney General, J. Michael Davis*, for appellee.