### 77132. HURSTON v. THE STATE.
(377 SE2d 519)

BEASLEY, Judge.

Following the denial of his motion for new trial, Hurston appeals his conviction and sentence for burglary, OCGA § 16-7-1.

1. Appellant contends that the evidence was insufficient to support his conviction because it was not proved that he entered the dwelling or had the intent to commit the crime.

The evidence viewed favorably to uphold the verdict, *Thomas v. State,* 175 Ga. App. 873, 874 (1) (334 SE2d 903) (1985), showed: at approximately 12:20 a.m., a police officer observed an automobile parked behind a condominium complex where a number of burglaries had occurred. As the officer drove by, he saw a man running from the edge of the buildings to the parked car. Seconds later, as the car drove off, the officer pursued and stopped it.

While the officer called in information about the vehicle, the driver, Hunter, got out of his car and started back towards the police car. As the officer approached Hunter, passenger Hurston got out of the car and was pacing back and forth beside it. The officer believed that at any minute Hurston was going to run off. After the officer got names and birth dates from both men, he asked Hunter where he was coming from. Hunter replied that he was delivering insurance papers to a friend's house, but he could not identify the friend or the ad-

dress.

Another officer arrived. Both officers observed through the windows of Hunter's car that the back seat was loaded with a television, a V.C.R., and a stereo system. One officer noticed a bulge in Hurston's rear pocket and, thinking it might be a weapon, patted Hurston down. The bulge turned out to be a set of keys which the officer returned to Hurston.

Hunter gave the second officer permission to look through the car. The officer discovered speakers for the stereo system in the trunk. Both officers noticed that the television's cable hook-up line had been cut rather than unscrewed. Hurston and Hunter were separated and placed in the back of the patrol cars.

A third officer who was patrolling the area was radioed and asked to investigate the condominiums near where Hunter's parked car had first been seen. He discovered an empty stereo cabinet lying on the ground outside a condominium, the door of which was open. He went in and noticed the imprint where the stereo cabinet had been and saw sections of cable lying on the carpet with a long cut section hanging from the wall outlet. The resident awoke, came out of her room, and was informed by the officer that her condominium had been burglarized.

The victim noticed a number of missing items, including her stereo, television, and keys. She told the officer that she had not given anyone permission to enter her home and remove the items. The officer radioed the first officer and said he had located a victim of a recent burglary.

In the meantime, Hunter was questioned about the items found in the car. He stated that he owned the equipment but misidentified the brand of the television. The third officer radioed the serial numbers on the missing items as given by the victim. The serial numbers matched those on the equipment in Hunter's car.

After Hurston arrived at the station, he was questioned about the set of keys found during the pat-down search. Hurston stated he did not have the keys. A search of the police car revealed a set of keys, identified as the victim's, stuffed under the back seat. The keys had been hanging on a hook in the condominium on the evening of the burglary.

At the station, Hunter gave a written statement. He said he and Hurston had driven to the condominiums, found one with an unlocked door, and entered. Hurston unhooked the equipment and they loaded the items into the car.

After pleading guilty, Hunter was called as a State's witness at Hurston's trial. Hunter repudiated his signed statement by testifying that he alone entered the condominium and carried the equipment to his car. The officers testified that the size and weight of some of the

equipment were too much for one person alone to have moved out of the condominium while negotiating the screen door and the unlevel ground. The victim testified that it originally required more than one person to put the television into her condominium.

Proof of Hurston's recent, unexplained possession of the stolen goods was sufficient to create an inference that Hurston was guilty of the burglary of the goods. *Bankston v. State*, 251 Ga. 730 (309 SE2d 369) (1983). Such inference was corroborated by Hurston's being in the vicinity of the burglary, by his nervous behavior when stopped by the officer, and by Hunter's prior out-of-court statement which the jury was authorized to consider as substantive evidence. *Gibbons v. State*, 248 Ga. 858 (286 SE2d 717) (1982). The inference together with the other probative evidence was sufficient to enable any rational trier of fact to find Hurston guilty of burglary beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Howard v. State*, 180 Ga. App. 817 (2) (350 SE2d 825) (1986).

2. Appellant contends the trial court erred in failing to charge the language of OCGA § 24-4-6. The record reveals that defendant did not object below to the failure to give the charge nor was any objection reserved for a motion for new trial or for appeal. Consequently, there is a procedural bar to consideration of the merits of appellant's contention. *Rivers v. State*, 250 Ga. 303, 309 (7) (298 SE2d 1) (1982).

3. Appellant contends that the trial court erred by allowing the State, over objection, to introduce into evidence his three prior convictions for marijuana-related violations of the Georgia Controlled Substances Act, OCGA § 16-13-30, and a fourth conviction for theft by shoplifting, OCGA § 16-8-14, because he had not opened the door to the admissibility of bad character evidence.

During direct examination, Hurston testified that on the night of the burglary he and Hunter drank beer and smoked marijuana. Under cross-examination, he testified, "I ain't done no burglary. I never have." At the State's urging, the trial court ruled that Hurston had put his character in issue and permitted introduction of the prior convictions.

The situation is controlled by the principles set forth in *Jones v. State*, 257 Ga. 753 (363 SE2d 529) (1988). The defendant's testimony that he committed the criminal act of smoking marijuana did not in and of itself place his character in issue within the meaning of OCGA § 24-9-20 (b). Id. at 759 (1) (b). As to defendant's denial of commission of burglary, the State would have been permitted to introduce evidence proving the falsity, if any, of the defendant's specific testimony, but the door was not open for the State to introduce evidence of the prior convictions unrelated and not relevant to the burglary on trial or to defendant's testimony. Id. at 759 (1) (a) and (c).

The defendant did not place his character in issue within the meaning of OCGA § 24-9-20 (b). Consequently, the trial court erred in allowing the evidence of defendant's prior convictions. The infected trial requires reversal of the judgment.

4. It is unnecessary to address appellant's remaining two enumerations of error, which concern his sentencing, because of our decision in Division 3, supra.

*Judgment reversed. Banke, P. J., and Birdsong, J., concur.*

DECIDED JANUARY 3, 1989.

*Eddie C. Varnadore*, for appellant.

*Thomas J. Charron*, District Attorney, *Nancy I. Jordan, Debra H. Bernes, Thomas A. Cole*, Assistant District Attorneys, for appellee.