## A89A0661. DAWSON v. THE STATE.
### (385 SE2d 684)

BIRDSONG, Judge.

This case, on earlier appeals, was remanded to the trial court for a determination on the solitary issue of effectiveness of counsel. Dawson v. State, 258 Ga. 380 (369 SE2d 897); Dawson v. State, 186 Ga. App. 718 (368 SE2d 367).

On remand, the trial court denied the claim of ineffectiveness of counsel. Dawson contends this was clear error because his trial counsel was unaware of the rule that a prior inconsistent statement of a witness is subject to cross-examination is admissible as substantive evidence and is not limited in value only to impeachment purposes, under Gibbons v. State, 248 Ga. 858 (286 SE2d 717). The prior inconsistent statement was an allegedly exculpatory letter written by co-conspirator Hampton to appellant after Hampton had pleaded guilty, and after Hampton had given a taped 11-page statement to the police incriminating appellant.

Appellant was found guilty in 1986 of conspiracy to commit armed robbery and attempted armed robbery. His defense was that, although he had been with the two men who committed the robbery attempt, he was "passed out" in the back seat of the conspirator's car when the other two went inside the victim's house. Dawson contends he knew nothing of the crime when it was committed; and, the next day he "turned in" the others.

Dawson complains also of counsel's "failure to interview" that conspirator, Hampton, who was at the courthouse, readily available to be interviewed and cross-examined.

On remand, the trial court held: "[Defense counsel] stated he was prepared to impeach Hampton with these prior statements in the event the State used [him] as a witness but he [feared calling] Hampton as Hampton had given an in-custody statement which inculpated Dawson. . . .The State introduced the in-custody statement of Hampton. . . . Counsel's actions are usually based, quite properly, on informed strategic choices. Representation is an art, and an act or omission, if reasonable, will not result in the violation of the defendant's rights guaranteed by the sixth amendment. The Court finds that

. . . Counsel cannot be criticized in his judgment not to call the co-defendant [Hampton] and the Court further finds trial Counsel's preparation and investigation were thorough and adequate." *Held*:

1. Under all the facts and circumstances of the case and after reviewing the transcript of the hearing on ineffectiveness of counsel, we conclude it is impossible to say defense counsel's performance was "deficient" (*Brogdon v. State*, 255 Ga. 64, 68 (335 SE2d 383)), i.e., that he made an incorrect decision in the first place, in deciding not to call co-defendant Hampton to the stand to support allegedly exculpatory statements he had made concerning appellant's participation in the crime, and to impeach an inculpatory statement made to the police.

Hampton had made an 11-page taped statement to an investigating officer, in which he strongly and in minute detail inculpated appellant in the crime. Defense counsel had a copy of this statement. He also had a copy of an allegedly exculpatory letter written to appellant by Hampton after Hampton had pleaded guilty and been incarcerated. We think defense counsel was correct in concluding the tone of this letter would not do much to help appellant's defense or boost Hampton's credibility.

The letter with some vulgarity, states: "David . . . You know what? That's exactly how I'm remembering everything now that I think of it. You can depend on me helping you keep out of this [trouble] [be]cause I don't want anybody to get in trouble who can get out of it. Besides! Like you said, you didn't have anything to do with it at all. And you know that I can help you out, *and will.* You just be sure you do something for me [be]cause you know that I'll be doing a hell of a lot for you. . . Go by Jackie's and leave me something as soon as you get home so that she can bring it to me tomorrow. She lives on Queen St., behind Big Star in apt. #310 and has a brown Ford LTD. If you can, send me a quarter [be]cause $30.00 ain't nothing compared to 30 years, is it? And if you have any change when you get ready to leave, let a runaround bring me some. I guess we will go to court next month and I'm sure I can keep you from having to go. Hell David!! I don't want to see you get [messed] up. There's no reason for it [be]cause you weren't involved in the [trouble]!! So count on me helping you every way I can!!! And *I know* it was *my mom* who got all the heat on us to start with. . . . Just don't worry about me [be]cause I'm going to take all this [trouble] by myself. . . . *But!* Make sure you help me out [be]cause you know I'm doing a . . . lot for you and hope you'll appreciate it enough to do me a favor in return. . . . Go by Jackie's as soon as you get home so she can bring that to me tomorrow. . . . *GOOD LUCK*"

This letter on its face strongly suggests that the purported "exculpation" was dependent upon appellant's assisting Hampton while

Hampton was in jail. Hampton even admitted to the trial court, at the ineffectiveness of counsel hearing, that his request for a "quarter" meant "that if [appellant] didn't send [Hampton] some money and some dope then [appellant] might get thirty years."

Defense counsel's consideration of this letter and the problems it would pose, and the problems Hampton's testimony might pose, extended to the determination that by the time this letter was written, Hampton had to know that it was appellant who had reported the crime to the police and turned Hampton in, and that it was not Hampton's mother. We are unable to disagree that, in the face of Hampton's 11-page statement implicating appellant, the tone of this letter does nothing to engender counsel's confidence in Hampton's sincerity in exculpating appellant. Moreover, we conclude that the underlying circumstances just described could contribute but little to trial counsel's confidence in any expectation that Hampton would in fact substantiate the exculpation on the stand, and even less so in Hampton's ability to overcome the impact of the 11-page statement incriminating appellant.

We are confirmed in this conclusion by the fact that at the hearing the trial court successfully impeached, or at least discredited, Hampton as to the exculpatory letter and as to his possible motives in writing it. There was also some reference to an alleged exculpatory statement he made to two persons who drove Hampton to Alabama to escape capture, but under the trial court's examination this proved to be so vague and equivocal that such evidence would have added more, rather than less, uncertainty to whether he had made such a statement and whether it could be proven on the stand.

We conclude that under the standards set in *Brogdon v. State*, supra and cases cited, it cannot be said that in the totality of the circumstances, trial counsel was deficient in professional judgment in not calling Hampton to exculpate appellant in any fashion. Even beyond this factor, we conclude that had counsel done differently there is no reasonable probability the outcome of the proceedings would have been different. The jury found appellant guilty upon the evidence before it and we see nothing so favorable or positive in the alleged exculpations that would have overcome the certain detailed incrimination in his 11-page taped statement to the police.

2. It follows that, while we think best caution on this issue of effectiveness of counsel would have encouraged trial counsel to at least interview Hampton prior to trial, we conclude from the exculpatory letter and what was seen at the hearing that such an interview would not have altered the decision not to call him; but if it had, and if counsel had called Hampton and introduced the "exculpatory" evidence, his judgment in doing so might well have been criticized as flawed, under the totality of all the circumstances in this case. See

*Brogdon*, supra.

*Judgment affirmed. Deen, P. J., and Benham, J., concur.*

DECIDED JULY 10, 1989 —
REHEARING DENIED JULY 31, 1989 —

Gammon & Anderson, W. Wright Gammon, Jr., T. Peter O'Callaghan, Jr. for appellant.

Darrell E. Wilson, District Attorney, Mickey R. Thacker, Assistant District Attorney, for appellee.