### A89A2078. LOCKRIDGE v. THE STATE.
(390 SE2d 853)

SOGNIER, Judge.

Danny Mitchell Lockridge was charged with the murder of his brother-in-law, and he brings this appeal from his conviction of voluntary manslaughter.

1. Appellant first contends the trial court erred by denying his motion for a new trial made on the ground that improper communication between a deputy sheriff and one of the jurors deprived him of a fair trial. The record reveals that after being empaneled the jury was sequestered, and Bryan County Deputy Sheriff Tim Faught was assigned to drive a juror home to collect her belongings for the overnight stay at a motel. While driving with the juror, Faught commented to her that appellant was "guilty. He deliberately murdered this man." The juror did not reveal this communication until after appellant's conviction, when her affidavit was appended to appellant's motion for a new trial. At the hearing on appellant's motion for a new trial, Faught denied having made the statement, and the juror testified that Faught's statement did not influence her verdict in any way. She recalled taking the oath as a juror and testified that she followed that oath. The trial court found that the communication had taken place, but that the deputy's statement did not prejudice the juror or influence her verdict.

"Where an unauthorized contact or communication is made to a juror, a valid conviction is not otherwise vitiated unless the defendant was actually prejudiced by the communication. [Cits.]" *Dudley v. State*, 179 Ga. App. 252, 255 (3) (345 SE2d 888) (1986). The burden is on the State to prove that the defendant was not actually prejudiced.

*Martin v. State*, 242 Ga. 699, 701 (251 SE2d 240) (1978). In the case sub judice, the prosecution carried its burden of showing that appellant was not harmed by the communication, compare *Lamons v. State*, 255 Ga. 511 (340 SE2d 183) (1986), and thus we find the trial court did not abuse its discretion by denying appellant's motion for a new trial on this ground.

2. Appellant raises error in the trial court's refusal to allow his expert to examine the State's crime scene photographs to determine if they had been altered. Appellant relies on the Supreme Court's holding in *Sabel v. State*, 248 Ga. 10 (282 SE2d 61) (1981) that "[a] criminal defendant on trial for his liberty is entitled on motion timely made to have an expert of his choosing, bound by appropriate safeguards imposed by the court, examine critical evidence whose nature is subject to varying expert opinion." Id. at 17-18 (6). "Critical evidence" is evidence which is crucial to the State in obtaining a conviction, i.e., evidence which, when doubt is cast upon it by skilled defense experts, "could induce a reasonable doubt in the minds of enough jurors to avoid a conviction." *White v. Maggio*, 556 F2d 1352, 1357-1358 (5th Cir. 1977). In this case, the State agreed to produce the photographs for in camera inspection by the trial court to determine whether any of the photographs were critical evidence within the meaning of *Sabel*, supra. The trial court inspected the photographs and found that they were not critical evidence. We find no error in the trial court's ruling, particularly since the transcript reveals that Dr. Joseph Burton, appellant's retained expert, testified that he had examined the crime scene photographs and had determined that nothing in the photographs as presented by the State was inconsistent with the defense theory of how the shooting occurred. If the photographs as presented were not inconsistent with the defense theory, it follows that they could not be crucial to the State in obtaining a conviction.

3. Appellant contends the trial court improperly restricted his cross-examination of GBI Agent Nathan Katzif regarding Katzif's prior testimony before the grand jury. Prior grand jury testimony has been ruled admissible in criminal cases for impeachment purposes. See *Williams v. State*, 253 Ga. 690 (324 SE2d 440) (1985). However, contrary to appellant's assertion that the trial court so limited his cross-examination that he was deprived of his constitutional right to confront this witness, see *Davis v. Alaska*, 415 U. S. 308 (94 SC 1105, 39 LE2d 347) (1974), the record reveals that the trial court merely sustained two objections to specific questions posed by appellant's counsel to Katzif about whether Katzif had subpoenaed certain witnesses to appear before the grand jury and whether Katzif himself had testified before the grand jury. The trial court also indicated that it was concerned with the length of the questioning, and with getting

"distracted from the issues." The trial court did not give the jury an instruction to disregard Katzif's answers or prohibit any further inquiry into matters concerning Katzif's grand jury testimony. Defense counsel simply changed his line of questioning after these objections were sustained, and the matter was dropped. Accordingly, we find no abridgement of a constitutional right by the trial court in exercising its discretion to curtail the cross-examination. See *Hamilton v. State*, 184 Ga. App. 143, 145 (361 SE2d 30) (1987).

4. Appellant finally contends the trial court erred by permitting the State to introduce evidence of the victim's good character. "As a general rule, the character of a murder victim is irrelevant and inadmissible in [a] murder trial. [Cit.] It is unlawful to murder a violent and ferocious person, just as it is unlawful to murder a nonviolent and inoffensive person. [Cit.] Proof of violent and turbulent character of the deceased becomes admissible when it is shown prima facie that the deceased was the assailant, that the accused had been assailed, and that the accused was honestly seeking to defend himself. [Cits.]" *Henderson v. State*, 234 Ga. 827, 828 (1) (218 SE2d 612) (1975). In the case sub judice, the defense put the character of the victim in issue in its opening statement to the jury, and several hostile witnesses testified when examined by the defense in the State's case in chief as to the victim's bad character. " 'Where the defendant has offered evidence of threats against himself made by the deceased, the prosecution has been permitted to introduce evidence of the good character of the latter.' [Cits.] After the defense had thus distinctly put the character of the slain man in issue, and had introduced, for the consideration of the jury, testimony which tended to demonstrate that the deceased was a man of violent character, in the interest of truth and for the purpose of aiding the jury in their efforts to reach a correct conclusion as to this material issue the court properly refused to exclude evidence offered to show that the deceased was a man of an entirely different character from that portrayed in the statement of the accused and by his witnesses." *Crawley v. State*, 137 Ga. 777, 779 (1) (74 SE 537) (1912); see *Dixon v. State*, 243 Ga. 46, 49-50 (5) (252 SE2d 431) (1979).

*Judgment affirmed. Deen, P. J., McMurray, P. J., Banke, P. J., and Birdsong, J., concur. Carley, C. J., Pope, Beasley and Cooper, JJ., dissent.*

POPE, Judge, dissenting.

I dissent from Division 1 of the majority opinion. "A bailiff is to make no communication to a jury and is not to allow any other communication with them, except by leave of court. Where a communication from the bailiff to the jury is shown, the burden is on the state to rebut by proof the presumption of harm." (Citations and punctuation

omitted.) *Hollis v. State*, 191 Ga. App. 525 (382 SE2d 145) (1989). See also *Jones v. State*, 258 Ga. 96 (366 SE2d 144) (1988); OCGA § 15-12-140. Although the majority finds that the State met its burden because the juror testified that the deputy sheriff's remark concerning the defendant's guilt ultimately did not influence her ability to render a fair verdict in this case, her testimony in this regard was not without equivocation, in that she also testified that her initial response to the remark was that the case was "open and shut." Furthermore, our Supreme Court previously has recognized that there are some situations in which the misconduct may be so outrageous "that the public policy of the State requires a new trial for the defendant. [In those cases] the verdict should be set aside, whether the defendant was injured or not." *Shaw v. State*, 83 Ga. 92, 101-102 (9 SE 768) (1889). In my opinion, such was the situation created in the case at bar when an officer of the court stated to a juror that the defendant was "guilty [that h]e deliberately murdered this man." Consequently, I would reverse the trial court's denial of defendant's motion for new trial on the basis of the improper communication between the deputy sheriff and the juror.

I am authorized to state that Chief Judge Carley, Judge Beasley and Judge Cooper join in this dissent.

DECIDED JANUARY 4, 1990 —
REHEARING DENIED FEBRUARY 13, 1990 —

*Cook & Palmour, Bobby Lee Cook, Lloyd D. Murray, Jack E. Carney, Jr.*, for appellant.
*Dupont K. Cheney, District Attorney, J. Stephen Archer, Assistant District Attorney*, for appellee.