## S90A0333. MILLER v. THE STATE.
(390 SE2d 50)

FLETCHER, Justice.

The appellant, Tracy Anthony Miller, was convicted of the murder of James Walker, who was the grandfather of the appellant's wife, Julia Walker Miller. He was sentenced to life imprisonment. He appeals. We affirm.[1]

The evidence established that the appellant and his wife were married in August of 1987. After the marriage, they moved to Florida and then to Maryland. The appellant's wife gave testimony concerning instances in which the appellant had beaten her brutally, and she also testified that he had threatened to kill her many times. After seeking refuge in a shelter for battered women in Maryland, she had resumed living with the appellant in November of 1988. Shortly thereafter, she left the appellant while he was at work and returned to her grandparents' home in Georgia.

---

[1] The crime in this case was committed on November 24, 1988. The appellant was indicted on April 25, 1989. His trial began on June 19, 1989; the jury returned its verdict of guilty on June 22, 1989; and the appellant was sentenced on June 23, 1989. A motion for new trial was filed on July 11, 1989, and denied on October 27, 1989. The notice of appeal was filed on November 15, 1989, and the appeal was docketed in this court on December 8, 1989. The case was submitted for decision without oral argument on January 19, 1990.

Josephine Bell, who is Julia Miller's cousin, lived in a trailer next door to Julia Miller's grandparents' house. On November 22nd, Julia Miller and Josephine Bell were returning to the trailer when they observed the appellant in the vicinity of Julia's grandparents' house. They left and called the sheriff's department. By the time law enforcement personnel arrived on the scene, the appellant had left.

Later that day while Julia Miller, Josephine Bell, and several children were driving to Waynesboro, the appellant appeared behind them in an automobile. He began ramming their car and tried to run them off the road. Josephine Bell retrieved a gun from the glove compartment and fired it in the direction of the appellant's car. At that point he quit following them. Julia Miller then went to stay with another cousin in a different area.

On November 24th, Josephine Bell, Ernest Kelly, and various of the Walkers' and Bell's children and grandchildren had Thanksgiving dinner with the Walkers. Julia Miller was not there. At approximately 10:00 p.m., Josephine Bell, Ernest Kelly, and some of the children returned to the trailer.

As Josephine Bell's daughter, Consuelo Bell, was going to bed in the Walkers' house, she heard noises outside and dogs barking. Mr. Walker took a .32 caliber pistol and a sawed-off shotgun and went outside to investigate. Within a few minutes the sound of gunfire was heard. The appellant was seen jumping onto the front porch of the Walkers' house and kicking in the door. Mrs. Walker testified that he was in possession of a rifle. Consuelo Bell testified that Mr. Walker returned to the house. He and the appellant were in the living room, and she heard him say to the appellant, "If you move, I'll shoot you right there where you stand." The appellant then said, "Not if I get you first." Gunshots were then heard.

Mrs. Walker, who had taken the children and fled to the trailer, returned to her house. She saw the appellant and her husband in the living room "laying head to head, and all three guns was in there." She heard the appellant say, "I die, all of ya'll dead."

The victim died of gunshot wounds to his chest and abdomen, which went through his diaphragm and liver and penetrated his third lumbar vertebra. The appellant sustained gunshot wounds, resulting in near total, and probably permanent, paraplegia. Because of appellant's abdominal injuries, he now has a colostomy, and he must be catheterized three or four times a day.

The appellant testified that he had never hit his wife in his whole life, but rather she was a jealous woman and had been guilty of physically abusing him.

1. The evidence was sufficient to authorize a rational trier of fact in finding the appellant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. The appellant's character was not impermissibly placed in issue through the prosecuting attorney's cross-examination of the appellant's physician, who testified as a defense witness.

On direct-examination this witness testified that the appellant displayed erratic, disruptive, and psychotic behavior while he was in the hospital, although he further testified that such behavior is not uncommon for hospitalized patients who are in intensive care and suffering from physical injuries as serious as the appellant's. On cross-examination, the prosecuting attorney asked the witness whether the appellant's behavior was sociopathic. Over objection by the defense, the state then asked the witness if the appellant's behavior fit the profile of a wife beater. The objection was overruled, and the witness answered that although he was not a psychiatrist, he would think that sociopathic behavior would fit the profile of a wife beater. On redirect-examination, the witness again testified that it was not unusual for patients with injuries such as the appellant's to display the behavior engaged in by the appellant while he was in the hospital.

The questions posed to the witness on cross-examination concerned the testimony he had given on direct-examination. See generally OCGA § 24-9-64. The witness' testimony was not objectionable on the ground that it may have incidentally reflected on his character. *Edwards v. State*, 258 Ga. 12 (4) (364 SE2d 869) (1988). And although the appellant objected to the witness' testimony, he did not base this objection on the ground that the testimony impermissibly placed his character in issue or on the ground that the witness was not qualified as an expert to answer such question. See generally *House v. State*, 227 Ga. 257 (1) (181 SE2d 31) (1971).

We find no error.

3. The state's use of a hearsay document to impeach the appellant's testimony provides no ground for reversal.

The appellant testified on direct-examination that he did not have a scar on his body until after he had been physically abused by his wife after their marriage. Over objection by the defense on the ground of hearsay, the prosecuting attorney was allowed to cross-examine the appellant by stating that the state had in its possession an NCIC teletype from the state of New York which predated the appellant's marriage and identified him as having scars on his chest and arm. The state did not seek to admit this document in evidence as a business record or otherwise.

A witness certainly may be impeached by disproving facts about which he testified. *Johnson v. State*, 149 Ga. App. 775 (3) (256 SE2d 51) (1979). And in decisions predating *Gibbons v. State*, 248 Ga. 858 (286 SE2d 717) (1982), it was held that prior inconsistent statements by a witness, although normally inadmissible as hearsay, were admissible for the purpose of impeaching the witness' testimony, but not to

prove the truth of the matters contained therein. *Seaboard Coast Line R. Co. v. Smalley,* 127 Ga. App. 652 (194 SE2d 612) (1972) and cits. See also *Kraus v. State,* 169 Ga. App. 54 (311 SE2d 493) (1983). *Gibbons* allows such evidence to be used as substantive evidence, where the maker of the statement testifies at trial and is subject to cross-examination.

No mode of impeachment sought to be utilized by the state authorized use of the hearsay document in the manner used here. However, the subject matter of the testimony sought to be disproved was of only tangential materiality to this case. We find no harmful error.

*Judgment affirmed. All the Justices concur.*

DECIDED APRIL 5, 1990 —
RECONSIDERATION DENIED APRIL 27, 1990.

*Charles R. Sheppard,* for appellant.
*Michael C. Eubanks, District Attorney, Michael J. Bowers, Attorney General,* for appellee.